*L. C. Jacobs,* for appellant.

———————o———————

WHITNEY *v.* THE CITY OF MADISON and Others.

CORPORATIONS—MODE OF TAXATION.—There are, under our constitution and laws, two recognized modes of taxing the capital stock of corporations. One is by an assessment against the corporation itself by name for the whole amount of its capital stock, which assessment the corporation pays and charges up to the stockholders, or deducts from the profits of the corporation, diminishing its dividends. The other is where the stockholders are separately and severally listed by the assessor for the amount of their capital stock. The latter is the mode to be adopted, in all cases, where the statute does not otherwise provide. Page 335.

SAME.—The actual value of such stock must, in all cases, be the criterion of taxation. Page 336.

CAPITAL STOCK.—A tax assessed on the capital stock of a corporation, is a tax on the property of which such capital is composed. Page 336.

SAME—BONDS OF THE UNITED STATES.—The capital of a bank, consisting of "the bonds of the *United States,* issued and sold by the government of the *United States,* to raise and borrow money to carry on the now existing war,' etc., is not subject to taxation under the laws of a state. Page 336.

APPEAL from the *Jefferson* Circuit Court.

GREGORY, J.— *Whitney* seeks to enjoin the *City of Madison* and her *Treasurer and Collector* from assessing and collecting certain taxes for municipal purposes.

The complaint avers that the plaintiff and others are,

and for more than ten years last past have been, associated together and organized as a banking association, under the general banking laws passed by the legislature in 1852, and subsequent acts amendatory thereof, and as such association have been and are doing a banking business at *Madison*, under the name and style of the "*Indiana Bank*," where they own and possess a banking-house of the value of $6,000, and on which banking-house the said association has paid to said city a city tax for the year 1863, the same as assessed on all other real estate. That at the time for the assessment of the city tax by said city for said year 1863, to-wit: in *May* and *June* of said year, the paid-in capital of said association amounted to $113,000, divided into stock of $50 per share, and that at said time the plaintiff was the owner of $16,500 of said capital and stock, which he yet owns, and which is of said value.

That at the said time for assessing said city taxes for said year 1863, and before then, and from thence hitherto, the whole of the capital stock, together with all surplus accumulations of said banking association, was and is loaned to the government of the *United States;* to-wit: invested in the bonds of the *United States*, issued and sold by the government of the *United States*, to raise and borrow money to carry on the now existing war, suppress rebellion, etc., under and by virtue of acts of the Congress of the *United States*, and all of which bonds were issued by the *United States* government, and sold in the market subsequent to the act of Congress of *February* 25, 1862, authorizing a loan for war purposes, etc.

That, by an act of the legislature of *Indiana*, passed and approved *February* 14, 1848, entitled "An act to reduce the law incorporating the city of *Madison*, and the several acts amendatory thereto, into one act, and to amend the same," it is provided that, "for the purpose of revenue, the common council shall have power to levy an *ad valorem* tax not exceeding one-half of one per centum upon all real estate, including improvements, situated within

the corporate limits of said city; and also a like tax upon all personal property belonging to the residents of said city, or that may be in the possession of the said residents, including merchandise, bank stock, insurance stock, railroad stock, steamboats, household furniture, horses and carriages, money at interest, and all other kinds of personal property, whether in possession or in action."

That, by an act entitled "An act to amend an act entitled 'An act to reduce the law incorporating the city of *Madison*, and the several acts amendatory thereto, into one act, and to amend the same,' approved *February* 14, 1848," (approved *January* 15, 1849,) it is further provided, " That the assessor or collector, as the case may be, shall receive lists of taxable property from the persons owning the same, as directed in the 23d and 33d sections of the act to which this is an amendment, which shall set forth the real estate owned in the city, by its number or other description, and value thereof; stocks or interest in bank, railroads, steamboats, insurance offices, or other stock absolutely paid for, or the amount paid thereon; the value of goods and produce, not for export or in transit, owned or in possession of any inhabitant of the city, and the value of all ordinary personal property, together with money at interest; as also dogs, bitches, hogs, and other property named in the act of incorporation; all of which shall be subject to taxation by the order of the common council. And such owner of such property, moneys, or effects, or the agent thereof, shall sign his or her name to such list, and swear or affirm that it is a just and true list of all the property which they understand to be taxable for city purposes, and that the value put thereon by them is a fair and proper value, to the best of their knowledge and belief."

That, by the constitution of the state, it is provided that "the General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for

taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law." (Art. 10, sec. 1.)

That, at said time for assessing said city taxes for said year 1863, the plaintiff claimed that said stock, so owned and held by him in said banking association, was not taxable by said city for city purposes, though it was of the nominal par value, because the whole capital and stock of said association was so, as aforesaid, loaned to the *United States* government, and invested in said bonds; nevertheless, said city proceeded to assess him with a tax thereon of eighty-hundredths per cent. as and for so much stock held by him in said *"Indiana Bank;"* and placed said tax upon her tax duplicate assessment roll for said year, and delivered said duplicate to her said collector, with a precept commanding him (said collector) to collect the said tax by distress, and sale of the property, goods, and chattels of the persons therein named, charged, and assessed.

That the plaintiff has paid to said city all other taxes by her assessed against him for said year; that said tax on said stock is illegal and void, under the constitution and laws of the *United States*, for the reason aforesaid. Yet the said collector has levied upon his goods to make the same, and is about to and will proceed to sell the same, unless restrained by injunction from this court, to the great and irreparable injury of plaintiff; and inasmuch as the plaintiff is without any complete and adequate remedy herein, except by process of injunction of this court, he prays the court to grant a temporary restraining order herein, restraining said city and her collector from sale of said property levied on until the final hearing hereof, and on such final hearing to grant him a perpetual injunction restraining said city and her officers from the collection of said tax, to set aside said assessment and levy, and for general relief.

The complaint was verified by the affidavit of the

plaintiff. The defendants demurred to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was sustained, and the plaintiff excepted. Final judgment on demurrer. This presents the only question in the case.

This is not the court of last resort as to this question. By the constitution and laws of the *United States*, the Supreme Court thereof has jurisdiction by writ of error in this case.

It is provided by the statute under which the *Indiana Bank* is organized, that the circulation thereof must be based on "stocks or bonds," consisting of any portion of the public debt then created, or thereafter to be created, by the *United States* or by this state, and chargeable on the treasury, or such other states of the *Union* as pay interest semi-annually, or at any less period, on their public debt. 1 G. & H. 125, secs 6, 7. It was therefore contemplated by the legislature, when this law was passed, that banking associations organized thereunder should have the right to vest their capital, or some portion thereof, in the stocks of the *United States.*

There are, under our constitution and laws, two recognized modes of taxing the capital stock of corporations. One is an assessment against the corporation itself, by name, for the whole amount of its capital stock, which assessment the corporation pays and charges up to the stockholders, or deducts from the profits of the corporation, thus diminishing the dividends; the other is, the stockholders are separately and severally listed by the assessor for the amount of the capital stock which they may own in a corporation. *King* v. *The City of Madison*, 17 Ind. 48. The latter is the mode to be adopted in all cases where the statute law does not direct otherwise. *Conwell* v. *The Town of Connersville*, 15 Ind. 150.

Under the constitutional provision, that "the General Assembly . . . shall prescribe such regulations as shall secure a just valuation for taxation of all property, both

real and personal," the actual value of such stock must in all cases be the criterion for taxation.

It follows that a tax assessed on the capital stock of a corporation is a tax on the property of which such capital is composed. In the case at bar, the capital of the bank, on which the tax sought to be enforced is assessed, consists of "the bonds of the *United States*, issued and sold by the government of the *United States*, to raise and borrow money to carry on the now existing war," etc.

*Marshall*, Ch. J., in the case of *McCulloch* v. *The State of Maryland et al.*, 4 Wheat. 316, announced the true principle which must govern in settling the difficult and delicate questions arising from the apparently conflicting powers of the national and state governments over the subject of taxation. He says: "If we measure the power of taxation residing in a state by the extent of sovereignty which the people of a single state possess, and can confer on its government, we have an intelligible standard applicable to every case to which the power may be applied. We have a principle which leaves the power of taxing the people and property of a state unimpaired; which leaves to a state the command of all its resources; and which places beyond its reach all those powers which are conferred by the people of the *United States* on the government of the *Union*, and all those means which are given for the purpose of carrying those powers into execution. We have a principle which is safe for the states, and safe for the *Union*."

And in view of this principle, he concludes by saying that "the court has bestowed on this subject, its most deliberate consideration. The result is a conviction that the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress, to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared."

The difficulty has been to make a proper application of this principle to the cases that have grown out of our complicated systems of government.

This subject again came before the Supreme Court of the *United States*, in the case of *Weston and Others* v. *The City Council of Charleston*, 2 Peters, 449. The main question involved in that case was this: "Is the stock issued for loans made to the government of the *United States* liable to be taxed by states and corporations?" *Marshall*, Ch. J., in delivering the opinion of the court, says that "Congress has power 'to borrow money on the credit of the *United States.*' The stock it issues is the evidence of a debt created by the exercise of this power. The tax in question is a tax upon the contract subsisting between the government and the individual. It bears directly upon that contract while subsisting and in full force. The power operates upon the contract the instant it is framed, and must imply a right to affect that contract."

*Thompson*, J., in a dissenting opinion, says: "If the objection to this tax is to be sustained, it must be on the broad ground that stock of the *United States* is not taxable in any shape or manner whatever; that it is not to be included in the estimate of property subject to taxation; and that I understand is the extent to which a majority of this court mean to carry the exemption."

In the case of *The Bank of Commerce* v. *New York City*, 2 Black, 620, the question involved was, whether or not the stock of the *United States*, constituting a part or the whole of the capital stock of a bank organized under the banking laws of *New York*, is subject to state taxation. The capital of the bank being taxed under existing laws in that state upon valuation, like the property of individual citizens, and not, as formerly, on the amount of the nominal capital, without regard to loss or depreciation, it was *held* that: 1. Stock of the *United States* is not subject to taxation under the laws of a state. 2. A

state law for that purpose is unconstitutional, whether it imposes the tax on *United States* stock *eo nomine*, or includes it in the aggregate of the tax-payer's property, to be valued, like the rest, at its worth.

In the case of *The Bank of the Commonwealth* v. *New York City*, 2 Wallace     , this question was again considered, under the act of 1863 of the state of *New York*, by which it is provided that "all banks, banking associations, etc., shall be liable to taxation on a *valuation equal to the amount of their capital stock paid in, or secured to be paid in,* and their surplus earnings, etc., in the manner now provided by law," and the court *held* the rulings in the former case of *The Bank of Commerce* v. *New York City, supra,* applicable.

We think, in the light of these cases, that the *Jefferson* Circuit Court erred in sustaining the demurrer to the complaint.

The judgment of the Circuit Court is reversed; cause remanded to said court for further proceedings. Costs here.

*C. E. Walker,* for appellant.
*Edwin G. Leland,* for appellee.