## Wright, Auditor, &c., and Another *v.* Stilz.

UNITED STATES BONDS.—TAXES.—The bonds of the *United States* cannot be taxed by state authority.

NATIONAL BANK SHARES.—TAXES.—The shares of national banks are, by the act of Congress authorizing such associations, placed within the reach of the taxing power of the states, subject to certain conditions, which were intended to prevent any discrimination against such shares.

SAME.—That the capital of the bank is invested in *United States* bonds, does not affect the right of the State to tax the shares under the act of Con-gress. A tax upon the shares of a bank is not a tax upon the property or capital of the bank.

SAME.—Under existing laws, the shares of national banks cannot be taxed in this State, because no such tax is imposed upon the shares of banks organized under authority of the State.

APPEAL from the *Marion* Common Pleas.

FRAZER, J.—The appellee is a stockholder in the *First National Bank of Indianapolis*, a banking association organ-

ized in pursuance of the act of Congress of *June* 3, 1864, authorizing such associations. Its capital and surplus is all invested in *United States* bonds, and the only question before us upon which a decision is desired, is whether he can be taxed upon his shares of stock, under the laws of this State now in force, for state and county purposes.

The forty-first section of the act of Congress provides, "that nothing in this act shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under state authority, at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other monied capital in the hands of individual citizens of such state. *Provided, further,* that the tax so imposed under the laws of any state, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the state where such association is located; *provided,* also, that nothing in this act shall exempt the real estate of associations from either state, county or municipal taxes, to the same extent, according to its value, as other real estate is taxed."

The bonds of the *United States,* in which the capital of the bank is invested, cannot be taxed by state authority. This is too well settled to admit of debate, and, indeed, we believe that it is not now questioned in any quarter. But the shares of national banks are, by the act of Congress above quoted, placed within reach of the taxing power of the states, subject, however, to certain conditions mentioned in the act. These conditions were intended to prevent the states, in the imposition of such taxes, from making any discrimination against such shares, as compared with other monied capital held by citizens of such states, or as compared with shares in banks existing under the authority of such states. National banks, then, take their franchises

upon the terms that their shares shall be subject to the burden of taxation by the states, with certain limitations, and they cannot exist unless they invest at least one-third of their paid-in capital in *United States* bonds, and they may lawfully so invest it all. It seems to result, then, that by the very act of becoming members of such a banking association, the shareholders, in consideration of the franchises thus obtained, surrender to the states the abstract right to hold such shares exempt from state taxation, and that the power of the states to tax the shares cannot be, in any sense, dependent upon the fact that a part or the whole of the capital of the association is invested in government bonds. If this be not so, it would be within the power of the bank to defeat entirely the imposition of the tax upon its shares which the act of Congress authorizes, by the easy, safe, and not unprofitable expedient of investing its entire capital in such bonds, an operation not prohibited, but rather encouraged by the general scope of that law. Such a proposition, it is proper to say, is not now urged by the learned counsel for the appellee. Indeed, it would be in conflict with the decision of the Supreme Court of the *United States* in *Van Allen* v. *The Assessors*, 3 Wall. 573, and in *The People* v. *The Commissioners*, 4 Wall. 244, decided only a few days ago. The claim that the shares are exempt from taxation is based in argument exclusively upon the provisions of our own local banking laws and revenue system, and it is contended that under these the shares of banks of our State may be withdrawn from taxation, so far as their corporations shall choose to invest their capital in government securities, and therefore, under the act of Congress, the shares of national banks must possess the like immunity.

In *Whitney* v. *Madison*, 23 Ind. 331, we held that a stockholder of a bank organized under the general banking laws of this State, the entire capital and surplus of which was invested in *United States* bonds, could not be taxed upon his shares by the city of *Madison*. This conclusion was drawn

from two propositions, the first of which had shortly before been established by the Supreme Court of the *United States* in two cases, (*The Bank of Commerce* v. *New York City*, 2 Black 620, and the bank tax case, 2 Wal. 200,) and the second had been held by this court. *King* v. *Madison*, 17 Ind. 48; *Conwell, Prest., &c.* v. *Connersville*, 15 Ind. 150. These propositions are: 1. That the capital of a bank invested in *United States* bonds is not taxable. 2. That a tax upon the shares of stock of a bank is merely a mode of taxing the property of the bank. The ruling in *Whitney* v. *Madison* is not questioned by counsel, but we have nevertheless examined it, and finding its reasoning to be in conflict with the late cases decided by the Supreme Court of the *United States*, (*Van Allen* v. *The Assessors*, and *The People* v. *The Commissioners, supra*,) we yield to those cases as authority by which we are bound, and which we must obey. It is there expressly held that a tax upon the shares is not a tax upon the property belonging to the corporation. The great current of cases previously decided by the state courts is believed to be the other way. We cite 10 Mass. 514; 9 Met. 199; 4 Zabr. 400; 9 N. H. 423. But in 11 Pick. 514, the doctrine lately held by the Supreme Court of the *United States* is strongly maintained.

We think that as an original proposition it is, in the nature of things, true that a tax upon the shareholders for the value of their shares is not a tax upon the property held by the corporation. If the corporation owns real estate, the stockholders are not, on that account, freeholders. The corporation is itself a separate person in law, and holds its property in its own right, and not, in any accurate legal sense, as the trustee of the corporators. The aggregate value of the shares is not measured by the net aggregate value of the assets of the corporation, but may be greatly more or less. The value of the shares depends mainly upon other elements, prominent amongst which are the value of the franchises, the management of the corporate business, and the consequent profits earned and paid under the form

of dividends. To illustrate: There may be one national bank which has half a million of assets and is free from debt, but it earns no dividends. Its shares will not sell at par, for the reason that money invested in them would be unproductive capital. Another such bank has equal assets, and equal capital stock, but it earns and divides amongst its shareholders twenty per cent. per annum. Its shares will probably sell at a large premium; they may be worth 150 in the market, while those of the bank first supposed are unsought at 75. Now if the shares of the corporations are taxed at their true value, the one will yield only half as much revenue as the other, though the property owned by each corporation is exactly the same in value. It is, however, true that a tax upon the property of the bank, required to be paid by the bank, would indirectly affect the shareholders by reducing their dividends. It has not, therefore, been usual, at the same time, to tax the bank upon all its property, and the shareholders also upon the value of their shares. It has been deemed unfair to do so. Indeed, it has been held that a law exempting a corporation from taxation also exempted its shareholders from taxation upon their shares. 4 Zabr. 400.

Until recently, there has been little occasion, in any of our states, to consider the subject of taxation very closely. The wants of government, both state and national, have been so few, and the amount of taxes necessary to be collected has consequently been so small, that even slight inequalities in public burdens of this kind, if avoidable, have rarely met with legislative sanction or popular approval, and the courts may have been partakers of the same feeling to the extent of leaning a little in favor of the citizen. But now that there is an enormous national debt, non-taxable by the states, held in the form of public stocks, and almost every state and county is subject to large liabilities which must be met by taxation, the matter receives a more careful scrutiny. But under existing laws, the shares in national banks cannot be taxed in this State for state and county purposes, for

the plain reason that no such tax is "imposed upon the shares of any of the banks organized under authority of the State," and the act of Congress therefore forbids it. We tax our own banks upon their paid-in capital, and do not tax the shareholders upon the value of their shares. 1 G. & H., Sup. 17. We would, by imposing this burden upon the shareholders of the national banks alone, make the discrimination against the latter which the national legislature has, in express terms, prohibited.

The judgment is affirmed, with costs.

ELLIOTT, J., was absent.

*D. E. Williamson*, Attorney General, for appellants.

*T. A. Hendricks*, *O. B. Hord*, *A. W. Hendricks*, *A. G. Porter*, *B. Harrison* and *W. P. Fishback*, for appellee.