# IN SPECIAL TERM, 1874.

### John G. Stiltz *v.* Henry Tutewiler, Treasurer, &c., The City of Indianapolis et al.

Bank Stock—*taxation of.*

Under the act of March 4, 1873, repealing so much of the act of March 15, 1867, exempting shares of stock in banks, from municipal taxation, shares of stock in all the banks of this State are taxable for municipal purposes by the authorities of incorporated towns, and cities of the State.

The act of Congress, approved Feb. 10, 1868, places but one limitation on the taxing power of the State, namely, that the shares of stock in national banks shall not be taxed, at a greater rate, than is assessed upon other moneyed capital in the hands of individual citizens of such State.

*McDonald & Butler*, for plaintiff.
*Elliott, Hanna & Knefler*, for defendant.

Newcomb, J.—Complaint for an injunction against the collection of taxes levied by the Common Council of the city of Indianapolis, for the year 1873, on certain shares of stock in the First National Bank of said city, owned by the plaintiff.

The tax was levied in conformity with the act of the General Assembly of March 4th, 1873, acts of 1873, regular session, p. 214, and is valid if the act itself is valid. The ground of the plaintiff's claim for relief is, that by the 15th section of the charter of the Bank of the State of Indiana, of March 3, 1855, the State exempted the capital stock of said bank from taxation for municipal purposes; that said bank with

its branches still remains an organized bank, with its capital stock and all its rights, privileges, and franchises in full force, and that its branches at Indianapolis, Rushville, Madison, Jeffersonville, Terre Haute, Muncie, Laporte, and Logansport, continue to hold, and exercise their rights, privileges and franchises under said charter; that the act of Congress authorizing the taxation by State authority of the shares of stock in National Banks, provides that the tax so imposed under the laws of the States should not exceed the rate imposed upon the shares of any of the banks organized under the laws of the State; and that inasmuch as the State cannot authorize municipal corporations to tax the capital stock of the Bank of the State, the shares of stock in National banks are exempt from such taxation.

The city, and her treasurer demur to the complaint.

The 15th section of the charter of the Bank of the State is as follows :

" The capital stock of said bank shall be subject to the same rate of taxation for State and County purposes, as the stock, or property of other moneyed corporations ; and the real estate and other property of said bank and branches, situated in any city or town, shall be taxable for municipal purposes in the same manner as other property so situated, but the capital stock of said bank, or branches, shall not be taxable for municipal purposes." 1 G. & H. 142. This exemption has been held to be constitutional by the Supreme Court. *The Bank of the State* v. *The City of New Albany,* 11 *Ind.,* 139; *The President, etc., of the town of Connersville* v. *The Bank of the State of Indiana,* 16 *Ind.,* 105. The 41st section of the National Banking Act, approved June 3d, 1864, is as follows:

" That nothing in this act shall be construed to prevent all the shares in any of said associations, held by any person, or body corporate, from being included in the valuation of the

personal property of such person, or corporation int he assessment of taxes imposed by, or under State authority, at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State. *Provided, further,* That the taxes so imposed under the laws of any State, upon the shares of any of the associations authorized by this act, shall not exceed the rate imposed upon the shares in any of the banks organized under the authority of the State, where such association is located ; *provided,* also, that nothing in this act shall exempt the real estate of such association from either State, County, or municipal taxes to the same extent, according to its value, as other real estate is taxed."

By the act of March 9, 1861, 1 G. & H. sup. 17, taxes were assessed against the banks in this State on their capital stock, and no tax on account of such stock was levied on the individual stockholders. This system of bank taxation continued until the taking effect of the act of March 15, 1867, which provided for taxing the *shares of stock* in *all* banks in this State, whether National or local, for all except municipal purposes. 3 *Ind., Statutes,* 33.

Until the taking effect of this act, there was no law of the State for the collection of taxes on National Bank stock, and stockholders therein escaped taxation on that species of property. *Wright, Auditor, &c.,* v. *Stiltz,* 27 *Ind.,* 338. The act of March 4, 1873, repealed the clause of the act of 1867, exempting shares of stock in banks from municipal taxation, and expressly provides, that such shares shall be taxable by the authorities of incorporated towns and cities of this State.

In the view I take of this case, it is unnecessary to inquire whether the act of 1873 can be enforced against the shares of stock of the remnant of the branches of the Bank of the State, as I think the question of the liability of the shares

of stock of other banks to municipal taxation does not depend on the solution of that question.

The Supreme Court of the United States, in the case of *Lionburger* v. *Rouse*, 9 *Wallace*, 468, announced a rule of interpretation, that seems to me fatal to the claim of the plaintiff in this action. The facts, in brief, were these: In the year 1857, there were ten banks of issue established in the State of Missouri, whose charter restricted taxation to one per cent. on the capital stock paid in, &c. Eight of those banks elected to organize as National Banks, while the others continued to do business under the charter granted by the State. By the general revenue law of Missouri, of February 4, 1864, shares of stock in banks, and other incorporated companies, were made subject to assessment as other property. Under this act, according to the statement of the case in 9th Wallace, " a tax of nearly two per cent. was levied by the State on the shares of one Lionburger, a resident of St. Louis, and a shareholder in the Third National Bank of St. Louis. Payment of the tax being refused, the collector, a certain Rouse, collected it forcibly. Lionburger, thereupon, brought suit against him in one of the State courts for the alleged wrongful act, asserting that the proviso in the 41st section of the act of 1864, imposing a limitation on the power of the States, had reference to banks of issue alone ; that the State had disabled itself by its contract with them to tax that sort of bank, otherwise than it had contracted for, (one per cent.), and that the assessment and collection, if made under color of law, were without any legal authority whatever. It was not denied that the two State banks of issue held a very inconsiderable portion of the banking capital of the State, and that the shares of all other associations in the State, (of which there were many, some created after 1857, and some before) with all the privileges of banking, except the power to emit bills, were taxed like the shares in National banks."

The decision of the Supreme Court of Missouri was adverse to Lionburger, and he appealed to the Supreme Court of the United States. The latter court unanimously affirmed the decision of the State court. I copy a portion of the opinion delivered by Justice Davis in that case. " It is very clear that Congress, in conceding to the States the right to tax, adopted a measure which it was supposed would restrain them from legislating adversely to the interests of National banks. The measure itself had reference to prospective legislation by the States, and its object was accomplished when the States conformed, as far as practicable, their revenue systems to it. Exact conformity was required, if attainable, but the law-making power did not intend such an absurd thing, as that the power of the State to tax should depend on its doing an act which it had obliged itself not to do. It was well known at the time, and Congress must be supposed to have legislated on this subject with reference to it, that States, by contract with individuals, or corporations, could grant away the right of taxation, and that this power has been frequently exercised. It was equally within the knowledge of Congress, that the policy on this subject varied in different States ; while some of them retained in their own hands the power of taxation over all species of property, except such as were devoted to religious, or charitable purposes, others had parted with it to interests of a purely business character, like banks and railroads. Can it be supposed that Congress, in this condition of things in the country, meant to confer a privilege by one section of a law, which by another it made practically unavailable? If the construction contended for, by the plaintiff in error, be allowed, then the State, so unfortunate as to have a single bank whose shareholders are exempt, by contract, from taxation in the manner provided for by Congress, can derive no benefit from the power given to tax the shares of National banks. And this further

consequence will follow, that the shareholders of National banks located in one State would escape all taxation, while those whose property was invested in banks in a different locality, would have to contribute their full share of the public burdens. This court will not impute to Congress a purpose that would lead to such manifest injustice, in the absence of any express declaration to that effect. Without pursuing the subject further, it is enough to say, in our opinion, Congress meant no more by the second limitation in the proviso to the 41st section of the National Banking Act, than to require of each State, as a condition to the exercise of the power to tax the shares in National banks, that it should, as far as it had the capacity, tax in like manner the shares of banks of issue of its own creation."

Testing the case in hand by this rule, it is apparent that the tax complained of was properly assessed and collected. Missouri has complied, so far as it had the ability to do it, with the demands of the law."

The only distinction between the Missouri case, and the present, is, that it does not appear by the pleadings, that there are any other banks existing in this State, having shares of capital stock, other than the remaining branches of the Bank of the State. It may be there are none, and the complaint avers that there are none to the plaintiff's knowledge; but on the reasoning in the case of *Lionburger* v. *Rouse,* it is difficult to see that it can make any difference in the principle there asserted. The statutes of the State provide for other banks of issue, by the free banking law of 1855, and for banks of discount, and deposit, by the act of February 7, 1873; and on the shares of stock of all banks the law fixes the same rate of taxation; so in every respect this State has brought her revenue laws within the principles laid down by the Supreme Court of the United States. The fact is notorious that the few remaining branches of the Bank of the State

" hold a very inconsiderable portion of the banking capital of the State," and that they long since ceased to perform the functions of banks of issue.

I have thus far discussed this case on the supposition that the 41st section of the National Banking Act is still in force, but the proviso on which this action is based, seems to have been repealed by a subsequent act of Congress. Indeed, it is said in the case of *Lionburger* v. *Rouse, supra*, " that the changed condition of the banking interests of the country has been the occasion of further legislation by Congress on this subject, and that *now* the power of State taxation over the shares of National banks is subject only to the restriction that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens."

The legislation here referred to is an act of Congress, approved February 10, 1868, entitled, " An Act in relation to Taxing Shares in National Banks." The following is the full text of the Act:

" *Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled,* That the words 'place where the bank is located, and not elsewhere,' in Section 41 of the Act to Provide a National Currency, approved June 3d, 1864, shall be construed and held to mean the State within which the bank is located, and the legislature of each State may determine and direct the manner and place of taxing all the shares of National banks located within said State, subject to the restriction, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State ; and *provided, always*, that the shares of any National bank, owned by non-residents of any State, shall be taxed in the city or town where such bank is located, and not elsewhere." 15 *U. S. Statutes-at-Large*, 34.

This act places but one limitation on the taxing power of the States, namely: that the shares of stock in National banks shall not be taxed "at a greater rate than is assessed upon other moneyed capital in the hands of *individual citizens* of such State."

It is not charged in the complaint that the tax on the plaintiff's bank stock exceeds the rate so limited.

The act of March 4, 1873, took effect from its passage, and authorized the assessment of the taxes complained of for the current year, *DePauw* v. *The City of New Albany*, 22, *Ind.*, 204.

The demurrer to the complaint is sustained.

This opinion was affirmed in General Term, as rendered by Judge Newcomb, and affirmed in Supreme Court, November Term, 1874.—REPORTER.