NEW YORK PRACTICE REPORTS. 371

People *ex rel.* Lincoln agt. The Assessors of the Town of Barton.

## SUPREME COURT.

### THE PEOPLE *ex rel.* WILLIAM S. LINCOLN agt. THE ASSESSORS OF THE TOWN OF BARTON.

Where an improper assessment and tax on personal property is laid, a *mandamus* is the proper remedy to strike it from the assessment rolls.

It must now be regarded as settled by the decisions of the supreme court of the United States, that the bonds and other securities issued by the United States are exempt from taxation by *state authorities,* whether so exempted in express terms, by the act of congress under which they were issued or not.

A *bank* which has invested its capital in whole or in part in such bonds or securities, is exempt from taxation on its capital to the extent of such investment.

But the assessment of the *shares of such bank* in the hands of the shareholder, is not an assessment of the bonds or securities held by the bank. Such securities belong to the *corporation,* and not to the shareholders jointly.

The *shares of a national bank* organized under the act of congress, held by any person, are by such act authorized to be taxed under state authority: *Provided* that the tax shall not exceed the rates imposed upon the shares in any of the banks organized under the *state authority.* And this restriction is within the *constitutional* power of congress to make, and is valid.

The act of the legislature of this state, enabling the banks of this state to become associations for the purpose of banking under the laws of the United States, passed March 9, 1865, provides for the taxation of the shareholders of the national banks, but makes no provision for a similar taxation of the shareholders of° the *state banks.*

The system of taxation adopted by the state under the provisions of the Revised Statutes, is that the laws of the state provide for the taxing the *capital* of a state bank, and the *stockholder is not to be taxed as an individual upon his stock.* Therefore there is no state law making provision in any case for taxing the shareholders in *state banks* for their shares. Consequently the shareholders in national banks or state banks are not liable for taxation on such shares.

*Tioga Special Term, August,* 1865.

MOTION *for a mandamus* to compel the assessors to strike the assessment against the relator from their assessment roll.

F. D. WRIGHT, *for relator.*

E. H. BENN, *for assessors.*

PARKER, J. The relator is the owner of thirty shares in the banking association organized under the laws of the United States, and known as the First National Bank of

Waverly, located in the village of Waverly, in the town of Barton, in the county of Tioga, the whole of whose capital is invested in the bonds of the United States, issued under the act of congress passed February 25, 1862.

The assessors of the town of Barton, pursuant to the 10th section of the act of the legislature of this state, entitled, " an act enabling the banks of this state to become associations for the purpose of banking, under the laws of the United States," passed March 9, 1865, have included those thirty shares, at their par value of $100 per share (which is their actual value), in the valuation of the personal property of the relator, in the assessment of taxes in their town, thereby assessing the relator, who is not a resident of said town, in the sum of $3,000, for said thirty shares in said bank.    The relator insisting that the assessors have no right or authority to assess him for said shares, moves for a mandamus to compel them to strike such assessment from their assessment roll.

It is urged by the defendants that even if they have no right to make the assessment, a mandamus is not the proper remedy of the relator, inasmuch as if the assessment is made without authority of law, he may maintain his action against them for the damages, citing *Mygatt* agt. *Washburn* (15 *N. Y. R.* 316).    I know the rule is that in general a mandamus will not lie, when the party aggrieved has an ample remedy by an action at law, still I am inclined to think if the relator is entitled to any relief a mandamus will lie in this case.    Judge WOODRUFF, in *Wilson* agt. *The Mayor of New York* (1 *Abb.* 18, 21), has clearly shown by an examination of authorities, that in similar cases this remedy has been held to be a proper one, and in the present condition of the case I see no other adequate one.

One of the grounds on which the relator insists that the assessment is unauthorized, is, that an assessment of the shares of the bank in the hands of the shareholders, is virtually an assessment of the bonds of the United States,

NEW YORK PRACTICE REPORTS. 373

People *ex rel.* Lincoln agt. The Assessors of the Town of Barton.

in which the capital stock of the bank is invested, which bonds are, by the act of congress under which they were issued, expressly made " exempt from taxation by or under state authority." It must be regarded as settled by the decisions of the supreme court of the United States, that the bonds and other securities issued by the United States, are exempt from taxation by the state authorities, whether so exempted in express terms by the act of congress under which they are issued or not; (*McCulloch* agt. *State of Maryland,* 4 *Wheat.* 316 ; *Osborn* agt. *The Bank of the U. S.* 9 *Id.* 738 ; *Weston* agt. *The City Council of Charleston,* 2 *Peters,* 449 ; *The People ex rel. Bank of Commerce* agt. *Commissioners of Taxes, &c.,* 2 *Black,* 620 ; *S. C. 25 How. Pr. R.* 9 ; *The People ex rel. Bank of the Commonwealth* agt. *Commissioners of Taxes, &c.* 4 *Am. Law Reg.* 277,) and this exemption is so broad as to relieve the holders of such bonds or securities from taxation upon them, whether it is sought to be imposed upon them *eo nomine,* or as included in the aggregate of the personal property of the holder, so that a bank which has invested its capital in whole or in part in such bonds or securities, is exempt from taxation on its capital to the extent of such taxation. (*See last two cases above cited.*)

The question then arises whether the assessment of the shares of the bank in the hands of the shareholders, is an assessment of the bonds held by the bank as its capital. It seems to me that there is a very clear and marked distinction between these bank shares and the securities constituting the capital of the bank, and that it cannot be said that the holder of such shares is a holder of the United States securities. These belong to the corporation, and not to the shareholders jointly. If a portion of the capital was invested in real estate, it would scarcely be contended that each shareholder would therefore be a freeholder. The shares are not the capital divided into aliquot parts, and distributed into the hands of the shareholders;

that remains the undivided property of the corporation, while a share is a right to participate in the net profits of the association, and in the final distribution of its assets upon the winding up of its affairs, or, as defined by *Angell & Ames* in their work *on Corporations* (§ 557), " a right to partake, according to the amount of the party's subscription, of the surplus profits obtained from the use and disposal of the capital stock of the company to those purposes for which the company is constituted." In the case of *Rex* agt. *Hull Dock Co.* (1 *Term R.* 219), it was decided that lands purchased by the company and converted into dock, were ratable to the poor, notwithstanding a clause in the act of parliament that the shares should be personal estate ; but the rate was upon the property in the hands of the company, and not on the share of any individual proprietor. So on the other hand, it may with equal truth be said, that when the assessment is upon the shares of an individual shareholder, it is not upon the property of the corporation. And the assessment of the shares of the relator in this case, is not an assessment of the United States securities held by the bank, which are not liable to taxation, but of the personal property of the relator, so declared by the act of congress under which the bank is organized, his *choses in action*, representing his right to participate in the dividends of the bank, and to a *pro rata* distribution of its effects on hand at the expiration of the charter. This distinction is clearly recognized by the act of congress under which this bank is organized, which in its 41st section authorizes the shares in any of the associations organized under the act, held by any person, to be taxed under state authority.

In connection with the provisions of the act just alluded to, is one which raises another question which it is now necessary to consider. The two clauses of the act above referred to, are as follows :

" *Provided*, That nothing in this act shall be construed to

prevent all shares in any of said associations held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation, in the assessment of taxes imposed by or under state authority, at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon the moneyed capital in the hands of individual citizens of such state.

" *Provided further*, that the tax so imposed under the laws of any state, upon the shares of the associations authorized by this act, shall not exceed the rate imposed upon shares in any of the banks organized under authority of the state where such association is located."

The first of the above *provisions* very plainly makes the shares in such associations liable to be taxed under state authority, while the second prohibits such taxation at a higher rate than is imposed upon the shares of the state banks. The enabling act of the state above referred to, which provides for the taxation of the shareholders of national banks, upon their shares therein, makes no provision for a similar taxation of the shareholders of the state banks. This is another ground on which the relator insists that the assessment of his shares by defendants is unauthorized, as being in direct violation of the second *proviso* above quoted, from the act of congress.

The defendants' counsel replies to this, that by the statutes of the state previously enacted, the shareholders of state banks are taxable for their shares in all cases where the capital is not liable to taxation (*citing* 1 *R. S.* 387, § 1, *and* 388, §§ 3 *and* 7, *1st ed.*), and, therefore, that it was not necessary for the enabling act to make such provision. I do not think, however, that overcomes the difficulty. The first section above referred to by the counsel, provides that all *personal property* within this state shall be liable to taxation. By section 3, stocks in moneyed corporations are, for the purposes of taxation, to be deemed personal pro-

perty. But section 7 is as follows: "The owner or holder of stock in any incorporated company *liable to taxation on its capital,* shall not be taxed as an individual for such stock." Now section 1, of title 4, of the same chapter, entitled, "of the assessment and collection of taxes" (1 *R. S.* 414, 1*st ed.*), has this provision: "All moneyed or stock corporations deriving an income or profit from their capital or otherwise, shall be *liable to taxation on their capital,* in the manner hereafter prescribed." And by the act of 1863, it is provided that "all banks and other moneyed corporations, shall be *liable to taxation* on a valuation equal to the capital stock paid in, or secured to be paid in," &c (*Sess. Laws* 1863, *chap.* 240). This, as is held in *The People ex rel. Bank of Commonwealth* agt. *Commissioners of Taxes, &c.* (*supra*), is taxing the capital, and although to the extent that the capital is invested in United States securities it is not taxable, but only on the residue, still I think the language "liable to taxation on its capital," in section 7, means liable according to the system of taxation adopted by the state; that is, when the laws of the state provide for taxing the capital, the stockholder is not to be taxed as an individual upon his stock; and, therefore, the existing laws of the state come short of making provision in any case for taxing the shareholders in state banks for their shares. If it is said that when the capital of these banks is taxed, the shareholders are indirectly taxed on their shares, and the *proviso* is substantially complied with, still in all cases where a portion of the capital of the state banks is invested in United States securities, it is manifest that the state law discriminates against the shareholder in the national bank. If two banks, one national and one state, have each a capital of $100,000, the whole capital of the national bank invested in United States securities, and half of the capital of the state bank in the same securities, the shareholders of the national bank under the provisions of the enabling act, manifestly pay

taxes at a higher rate than those of the state bank, even considering the tax upon the capital paid by the shareholders, and this is in violation of the law of congress. We are brought then to the inquiry whether this *proviso* in the law of congress is within the constitutional authority of congress, or whether the power of a state to tax this property of its citizens is beyond the reach of congressional interference? Does the taxation by the state of the shares of the national banks interfere with "means which are employed by congress to carry into execution powers conferred on that body" by the constitution of the United States? This is the criterion. (*McCulloch* agt. *State of Maryland; Osborn* agt. *Bank of the U. S. ; Weston* agt. *City Council of Charleston.*)

I think I may assume that the national banks are instruments employed by the government of the United States in the prosecution of its fiscal operations, and that their creation is within the constitutional power of congress. The act under which they are organized, is entitled "an act to provide a national currency," &c., and it is apparent that it was intended to create a currency which would be useful to the government in its financial operations. They occupy to some extent the same relation to the government which the bank of the United States did, and for the same reason are authorized by the constitution. The mode of their establishment provided by the act, requires the action of individuals uniting to form the associations constituting the banks, and investing in them the means which go to make up their capitals. The government invites individuals thus to associate and organize banks which it may use as instruments to carry into execution some of its legitimate powers. It provides that these associations may carry on the business of banking, and, consequently, that the shareholders may derive therefrom the profits legitimately arising from such business. These profits constitute the inducement to individuals to accept the invitation of the govern-

ment to invest their capital in these banks. Now it is manifest that the power of the states to tax these bank shares would be an objection in the minds of those who are thus invited to invest in them, and might defeat their establishment. . Hence congress, thus having the right to establish them, might provide against such an obstacle, and prohibit such taxation. " It is of the very essence of supremacy to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments as to exempt its own operations from their influence " (*McCulloch* agt. *State of Maryland*).

As the right of a state to tax the securities of the United States would be a burden upon the exercise of the power of the United States to borrow money, because of its lessening the inducement to lend on such securities, and is, therefore, precluded, so the right of a state to tax the shares of the national banks, would be a burden upon the exercise of the right to establish such banks on the same principle, and for that reason such shares would not be subject to state taxation unless by the permission of congress. The act of congress, however, does permit their taxation by the states, provided no discrimination is made against them in such taxation. Having the power to prohibit the taxation altogether, it has the power to modify it, and provide under what circumstances it shall be exercised. The restriction contained in the *proviso* under consideration, therefore, is within the constitutional power of congress to make, and is valid and must control. It follows, if I am correct in the views above taken (which I put forth with diffidence, as they are the result of a necessarily hasty examination) that the defendants have no authority to assess the shares of the relator, and such assessment should be stricken from their roll.

The affidavit of the relator brings forward all the facts necessary to raise the question of the defendants' right to make the assessment, and none of these facts are denied

by the defendants. Both parties have been heard upon an order to show cause why a peremptory mandamus should not issue. There is no occasion for an alternative writ, but the case is one for a peremptory writ to issue at once (4 *Hill*, 20).

An order must be entered directing the issuing of a peremptory mandamus commanding the defendants as indicated in the order, to show cause. As the question is a new one, no costs of this motion are allowed to either party.