HUBBARD *et·al.* v. THE BOARD OF SUPERVISORS OF JOHNSON COUNTY.

DAVENPORT NATIONAL BANK v. SCOTT COUNTY.

NATIONAL STATE BANK OF OSKALOOSA v. YOUNG.

I. Per WRIGHT, J., LOWE, Ch. J., and DILLON, J., concurring.

1. Taxation: OF SHARES IN NATIONAL BANKS. While the *capital* of national banks cannot be taxed by State authority, the shares of shareholders may be, in a rate not exceeding that imposed upon the shares of banks organized in and by the authority of such State.

2. —— WHAT THE POWER IS DEPENDENT UPON. But if the laws of the State merely provide for the taxation of the *capital* of its own banks, and not of the *shares* held therein, a subsequent or further provision for the taxation of the shares of national banks is not in conformity with and is unauthorized by the act of congress providing for the organization of national banks, and is, therefore, invalid.

3. —— NOT AUTHORIZED BY LAWS OF THE STATE. The laws of our State do not provide for the taxation of the shares in the banks organized under its authority, but only of the *capital* of such banks, and, hence, chapter 108, Laws of 1866, providing for the taxation of shares in national banks, was unauthorized and invalid.

4. —— ORGANIZATION OF STATE BANKS. That there are in existence no organized banks under a State system which authorizes their organization, is an immaterial fact, and does not authorize the taxation of shares in national banks, unless the taxation of shares in the banks authorized by the State is also provided for.

5. —— UNAUTHORIZED ASSESSMENT: MODE OF RELIEF. In the case of the assessment of a tax wholly unauthorized, it is not necessary, before filing a bill to enjoin its collection, for the aggrieved party to make application for relief to the board of supervisors. The case is not like that of a mere erroneous or excessive assessment.

6. —— PARTIES IN A PROCEEDING TO ENJOIN COLLECTION. In a proceeding to restrain the collection of such unauthorized tax, the county treasurer is a proper party defendant.

Hubbard v. The Board of Supervisors of Johnson County.

## II. Per COLE, J., dissenting.

7. —— Our law (Rev. § 712) expressly provides that all (except certain exempt) *property*, real and personal, is subject to taxation, and by the decision of the Supreme Court of the United States, shares in bank stock are *property* other and different from the capital, and liable to taxation: hence, by our statute, independent of the act of 1866, the taxation of shares in *both* our State and national banks is authorized.

*Appeals from Johnson, Scott and Mahaska District Courts.*

WEDNESDAY, JULY 31.

EXCEPT as will be noticed in the opinion, these cases involve the question of the validity of the act of 1866 (ch. 108, p. 114), which provides for the taxation of the shares of national banks. They are all, in equity, to restrain the collection of the tax for the year 1866; and the essential point made is, that such taxation was not authorized in view of the language of section 41 of the act of congress of June 3, 1864, providing for the organization of national banks. The relief was granted in the first and third cases, and denied in the second. Exceptions were duly taken and the cases are now before us upon the appeals of the parties respectively unsuccessful.

*Fairall & Boal* for the appellant in the first case.

*Edmunds & Ransom* for the appellee.

Copies of counsels' argument in this case are not found on the reporter's file.

*Putnam & Rogers* for the appellant in the second case.

From the elaborate argument of Mr. Rogers, the following is extracted.

Chapter 108, of the Laws of 1866, constitutes the law of this State which is claimed to authorize the taxation now in question. It is, in its terms, substantially identical with the statute of New York, of 1865, relative to the taxation of stock in the national banks. Both acts appear, on their face, to conform to the conditions of the act of congress above referred to, and any objection to their validity must be looked for elsewhere than in the text of these particular statutes.

Such an objection, and a fatal one, has been held to exist, in respect to the New York statute, arising out of the other existing legislation of the State, regulating the taxation of banks created by State authority.

In *Van Allen* v. *The Assessors* (3 Wallace, 573), 5 Am. Law Reg. (N. S.) 609, it was unanimously determined by the Supreme Court of the United States, that a tax on the stock of national banks, levied in pursuance of the New York statute just referred to, was illegal, and must be set aside, for the reason that the other taxing laws of the State provided for no taxation upon the *stock* of the *State* banks, to the stockholders, but required the *banks themselves* to be taxed upon their capital, or property; and that the two statutes, taken together, failed to comply with the condition in the forty-first section of the act of congress: " That the tax so imposed, under the laws of any State, shall not exceed the rate imposed upon *the shares* in any of the banks organized under authority of the State where such association is located." The reason assigned is, that a tax to the bank, upon its capital, is not equivalent to a tax to the stockholder, upon his shares of stock — inasmuch as, in the former case, under previous decisions of the court, the bank is exempt from taxation upon so much of its capital (even to the extent of the *whole*) as may be invested in non-taxable United States securities (2 Black, 620; 2

Wallace, 200), an exemption which does not extend to the stockholder, when taxed for the shares held by him.

The legislature of Iowa is in the precise predicament on this subject as that in which that of New York was thus adjudged to be; and the decision in *Van Alen* v. *The Assessors* is directly applicable to this case, and decisive of it in favor of the bank. That this is so, we shall endeavor to show, by an examination of our statutory provisions relative to taxation of State banks.

The laws of this State provide for the creation of two classes of banking corporations within the State, viz., The State Bank of Iowa and its branches, and what are popularly known as "free banks," to be organized under the general banking law. We propose here to collate, for convenience, the different provisions of the statutes, relative to taxation of these banks, and of corporations generally.

The only provision in the law, authorizing the creation of the State Bank of Iowa, is the following section (1676) of the Revision:

" The general assembly shall never impose any greater tax upon property employed in banking under this act, than is, or may be, imposed upon the property of individuals."

In section 721 of the Revision (being part of the act to authorize general banking) occurs the following, which is all that is contained in the last named act, relative to taxation of the banks to be organized thereunder:

" *Taxes shall be levied on and paid by the corporation, and not upon the individual stockholders, the value of the property to be ascertained annually by the bank commissioners herein provided for;* and the rate of taxation shall be the same as that required to be levied on other taxable property by the revenue laws of the State."

In the general revenue law, the following provisions are found:

In section 712, of the Revision, among the various descriptions of taxable property, there is specified, "property situated in this State, belonging to any bank or company, incorporated or otherwise, whether incorporated in this or any other State."

Section 714 provides that, "The principal accounting officer of a body corporate, company or society, shall assist the assessor in listing all the property of such body corporate," etc.

In connection with these two sections, the preliminary chapter in the Code, *defining* certain words of frequent occurrence in the statutes, may be referred to, whereby the term "property" is defined as including personal and real property; and "personal property" includes money, goods, chattels, evidences of debt, and things in action.

Section 721, provides that, "Depreciated bank-notes, and the stock of corporations and companies, shall be assessed at their cash value."

Section 732, directs the board of supervisors to furnish each assessor with books, properly ruled, in which to enter —

First, the name of the individual, corporation, company, society, partnership or firm, to whom any property shall be taxable; second, his lands, etc.; third, "his personal property," among which is designated, "amount of stock, or shares, in any corporation or company, not required by law to be otherwise listed and taxed."

The foregoing are all the statutory provisions, bearing on the subject now in question viz.: the mode of taxation of State banks, under the laws of this State which have come to our notice.

We contend, that the system of taxation thereby pro-

vided for, is, that the corporation itself is to be taxed, precisely as though it were an individual, upon its actual taxable property, real and personal; and that the individual stockholders are not to be taxed upon their shares of stock.

If this position be sound, it follows, of course, that these banks cannot be taxed, upon any portion of their capital or assets, invested in the bonds of the United States, any more than an individual can be so taxed; and thus the precise state of things, determined in *Van Allen* v. *The Assessors* to be fatal to the power of the State to tax shares of stock in national banks, will have been demonstrated to exist in this State, and that decision will be brought to bear, incontrovertibly, upon the present case.

The " certificates of stock " issued to the members, it has been well observed by an able judge, in a case of much note, " are simply the muniments and evidence of the holder's title to a given share in the property and franchises of the corporation of which he is a member." Per COMSTOCK, J., in *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 627. Now, if this be so, it is obvious that the share of stock itself, the thing of which the paper certificate is " the muniment and evidence of title," is the holder's " share in the property and franchises of the corporation," and that this cannot be a legitimate subject of taxation, *in addition* to the entire bulk of such property and franchises, considered as belonging to the corporate body itself, under any revenue system by which taxation is based upon, and measured by, the relative amount of property of the persons taxed. To tax property as a whole, and then to tax besides the several *shares* in it, belonging to different individuals, is simply taxing the same thing twice.

The statutes of Massachusetts provided for the taxation

of the shares of capital stock in moneyed corporations, to the several stockholders, individually, at their respective places of residence. It has, accordingly, been held in that State, in a series of decisions, *that it is a consequence* of such taxation, that the corporation itself cannot be taxed upon its personal property, the whole value of the personal property being included in or represented by the shares of stock. These decisions are put distinctly on the ground that otherwise the property would be twice taxed, which the legislature could not have intended. *Boston Water Power Co.* v. *City of Boston*, 9 Metc. 199 ; *Boston & Sandwich Glass Co.* v. *City of Boston*, 4 Id.: 184 ; *Salem Iron Co.* v. *Danvers*, 10 Mass. 514; *Amesbury Manuf. Co.* v. *Amesbury*, 17 Id. 561.

So also in Maine, the charter of a railroad company, provided that its capital stock should be divided into shares, to be holden and considered as personal estate. It was held that the land owned and held by the company for purposes of the railroad, was not liable to be taxed otherwise than as personal estate ; that each shareholder was taxable on his stock in the town where he resided, and not elsewhere ; and that to allow the towns through which the road might pass, to tax it, would be subjecting it to a *double* taxation, " which could be tolerated neither by the policy nor justice of the law, and the legislature could have designed no such thing." *Bangor & Piscataqua R. R. Co.* v. *Harris*, 8 Shep. (Me.) 533.

A striking similarity will be at once observed between this decision and that of this court, in *Tallman* v. *The Treasurer of Butler Co.*, 12 Iowa, 531, in which it was held that, under the former provision of our revenue act, providing that the property of railroad companies should be taxed through the shares of stock, *lands* owned by such companies could not be taxed specifically The only difference between the two cases is, that the Iowa statute

was more explicit than that of Maine. See also *Gardiner* v. *Woolen Manuf. Co.*, 3 Greenl. 133.

The exact converse of the Massachusetts and Maine cases, will be found in *Smith* v. *Burley*, 9 N. H. 423. There, the statute provided for taxing the property of corporations themselves, in the towns where situated; and it was held that, consequently, the stockholders could not be individually taxed upon their shares. This, it was held, "would in fact be a double taxation — once to the corporation itself, and again to the corporators, which would be unjust, oppressive, and unconstitutional."

These cases, with others, are stated in Angell & Ames on Corporations, and it is observed by the learned authors (§ 460) that they " are of importance, as recognizing the rule that the property of a corporation is not to be *twice* taxed." And after stating the cases in 9 Metc. 199, and 9 N. H. 423, they add (§ 461): " It appears, then, that the capital stock of a corporation may, in the discretion of the legislature be taxed as an aggregate to the corporation, according to its value, or to the stockholders on account of their separate ownership of it, but cannot be taxed at the same time in both modes."

It is sufficiently obvious that when the learned writers here speak of taxing the " capital stock, as an aggregate to the corporation," they mean by the phrase " capital stock," simply the actual capital or property owned by the corporation.

In *Gordon's Exrs.* v. *Mayor of Baltimore*, 5 Gill. 231, it was held by the Maryland Court of Appeals that the stock of a bank is the representative of its whole property, and that when a tax has been imposed on the stock in the hands of the shareholders, the real and personal estate of the corporation becomes exempt from taxation. " To tax," say the court, " the real and personal property,

and the stock, would be a double tax, and is therefore illegal."

The following cases will be found strongly to support the same views: *Bank of Cape Fear* v. *Edwards*, 5 Ired. (N. C.) 516; *Bank of Cape Fear* v. *Deming*, 7 Id. 55; *Union Bank of Tenn.* v. *State*, 9 Yerg. 490; *Cases of Taxation*, 12 Gill. & Johns. 117; *State* v. *Berry*, 2 Harrison (N. J.) 80; *Gardner* v. *State*, 1 Zabr. (N. J.) 527. The important case of *Gordon* v. *Appeal Tax Court*, 3 How. 135, in the United States Supreme Court, has a direct bearing on this point.

*James T. Lane* and *L. A. Ellis* for the appellee.

1. The interest of a stockholder, as represented by the shares of stock in a bank, is a *distinct, independent* interest or property, held by the shareholder *like any other property that may belong to him."* *Van Allen* v. *The Collector*, 3 Wallace, 573, "and we add, *of course is subject to like taxation."* Opinion of NELSON, J., in cases of *Duer* v. *Commissioner of Taxes* and *Mead* v. *Commissioner of Taxes*, for city and county of New York, in Supreme Court of United States, reported in June, 1867, in American Law Register, p. 467.

Also, *Bradley* v. *State of Illinois*, U. S. Supreme Court; *Wright, Auditor*, v. *Stiltz*, Supreme Court of Indiana.

*James A. Frazer* v. *S. W. Seibern et al.*, Supreme Court of Ohio, reported in American Law Reg. for June 1867, p. 466–487.

Also, *Union Bank* v. *Tennessee*, 9 Yerger, 490; Angell & Ames on Corporations, § 438; *Conwell* v. *Bank of Connersville*, 15 Ind. 150.

2. By the revenue laws of Iowa, the shares of stock in bank are to be assessed and taxed to the shareholder *as*

*his individual property*, while the *property* of the bank is to be assessed and taxed to the bank. See Rev. §§ 711–717, 719, 721, 722, 725, 733–735.

Also, Laws of 1866, chap. 108, p. 114.

3. Under the general banking law of this State, the shares of stock are the personal property of the shareholder, and the *taxes* are to be levied on and paid by the bank, but this only prescribes who shall pay the tax and not the corpus to be taxed, whether the capital or the shares of stock. This is left to be determined by the general revenue law. Revision, § 1598 (general banking law). See law passed at same time, March 23, 1858, Session Laws, 1858, § 7, p. 306, 307.

4. The proposition elaborated by the counsel for appellant, and upon which their whole argument is predicated, viz.: That the taxation to the moneyed corporation of *its* property, and *to the shareholder* of his shares of stock, is *double taxation*, is not correct as an abstract proposition of law, and is not sustained by the numerous authorities cited.

The case of *Boston & Sandwich Glass Company* v. *Boston*, (4 Metc. 184 [Mass.]) was under a statute which "required the personal property held by a corporation, *other than machinery*, to be assessed by a tax upon the shares of the individual members of such corporations;" *Held*, that the corporation could not be taxed for the personal property, *other than the machinery*, because the statute expressly exempted it.

*Boston Water-Power Company* v. *Boston*, 9 Metc. 199, was under the *same statute*. Also, *Salem Iron Factory* v. *Danver*, 10 Mass. 518 top, 514 side paging; *Amesbury Woolen Manufactory* v. *Amesbury*, 17 Mass. 461. But in 11 Pick. 513, the contrary doctrine for which we contend, is strongly maintained.

In the case of *Bangor and Piscataqua Railroad com-*

*pany* v. *Harris*, 21 Maine (8 Shep.), 533, the statute did *not* provide for taxing the *property, real or personal,* of corporations. *Held,* in the absence of such provision, that the depot of a railway company could not be taxed, while the stock could be taxed. It is conceded by the court, that the legislature could prescribe otherwise.

But this case has been expressly overruled in the case of *Cumberland Marine Railway* v. *Portland,* 37 Maine, 444.

The case of *Gardiner. Woolen Factory* v. *Gardiner,* 5 Greenl. 111, simply held that their *statute* was similar to that in Massachusetts. See 10 and 17 Mass., before cited.

Also, see *Augusta Bank* v. *Augusta,* 36 Maine, 255.

*Smith* v. *Burley,* 9 N. H. 423, expressly holds, that the legislature may tax the property of manufacturing corporations *to* the corporations, and the shares to the individual stockholder, but that the legislature had not done so in that case. Cases of Taxation, 12 Gill & Johns. 117. *Gordon's Executors* v. *Baltimore,* 5 Gill, 231, follow *Gordon* v. *The Appeal Tax Court,* 3 How. 133. The Supreme Court of the United States, in *People* v. *Commissioners of Taxes,* before cited from Am. Law Reg. p. 470, for June, 1867, by Justice NELSON, expressly hold that the above case in 3 Howard does not sustain the doctrine for which counsel cites it in this case, but only that, by a true construction of the act in question, the stockholders were within the scope of the exemption.

The cases of *Bank of Cape Fear* v. *Edwards,* 5 Ired. N. C. 516; *Bank of Cape Fear* v. *Deming,* 7 Id. 55; also *State* v. *Berry,* 2 Harrison, N. J. 80; *State* v. *Gardner,* 1 Zab. N. J. 527, are all under statutes which expressly declare, that the stock shall be taxed, and that there shall be NO *other tax on the bank.*

*Tallman* v. *Treasurer of Butler County,* 12 Iowa, 531, is in the same category.

The doctrine so confidently relied upon by counsel for appellant is directly in conflict with *Van Allen* v. *Nolan*, and the cases following it, already decided by Supreme Court of United States, before cited. In *Wright* v. *Stiltz*, the Supreme Court of Indiana (see Am. Law Reg. June, 1867, p. 473) declares, that the doctrine that a tax upon the shares of stock of a bank is merely a mode of taxing the property of the bank, laid down by that court in *Whitney* v. *Madison*, 23 Ind. 331, is overturned in *Van Allen* v. *Nolan*, and they follow the latter case.

In the case of *McCulloch* v. *State of Maryland*, 4 Wheat. 316, it is held, that "the exemption of the bank of the United States from *State* taxation, does not extend to a tax paid by the real property of the bank in common with other real property within the State; nor to a tax imposed on the interest which the citizens of Maryland may hold in the institution, in common with other property of the same description throughout the State."

Shares of stock in the United States bank, owned by an individual, was in his hands, a legitimate subject of taxation, and was subject to a tax imposed on bank stock by an ordinance of the City of Charleston. 1 Nott. & McCord, S. C. 527; *Beney* v. *Tax Collector*, 2 Bailey, S. C. 654; see *City of Utica* v. *Churchill*, 33 N. Y. 162–244.

5. The "property employed in banking" in section 1676 of the revision, means the *capital*, but does not include the separate and distinct property of the stockholder within the meaning of *Van Allen* v. *Nolan*. In *Wright* v. *Stiltz*, before cited, the court say "the aggregate value of the shares is not measured by the net aggregate value of the assets of the corporation, but may be greatly more or less. The value of the *shares* depends mainly upon other elements, prominent among which are the *value* of the *franchises*, the management

of the corporate business, and the consequent profits earned and paid in the form of dividends."

Section 1676 of the State bank law does not there prohibit the taxing to the shareholder, his separate interest represented by his share.

6. The construction of the above section of the State bank act, by counsel for appellant in his printed argument on pages 21 and 22, is the same in effect as was claimed by counsel in case of *People of New York* v. *Commrs. of Taxes* (Am. Law Reg., June, 1867, 468), under the first proviso of the forty-first section of the national bank act, and which was directly overruled in that case — the court holding that "the meaning and intent of the law makers were that the rate of taxation of the shares should be the same, or not greater than upon the moneyed capital of the individual citizen *which is subject or liable to taxation.*

7. It is not alleged in the bill in this case that there is, in fact, in existence at the present time, any banks, either under the general banking law, or the State bank act.

It is the *unequal practical result,* discriminating against the national banks, which the Supreme Court of the United States hold to be a violation by the State revenue laws of the proviso in the forty-first section of the national bank act, and this is the very doctrine laid down by counsel for appellant in his printed argument, on page 21. How can the result be unequal if there be no State banks in existence to be favored?

*The Ohio Life Ins. and Trust Co.* v. *Debolt* (16 How. 416) does not sustain the doctrine for which it is cited.

*Z. T. Fisher* for the appellant in the third case.

*Seevers & Williams* and *M. E. Cutts* for the appellee.

1. National banks can only be taxed as provided by congress. Under proper State laws, the shareholders may be, but not the corporation. *Van Allen* v. *Nolan*, 3 Wallace, 573; Am. Law Reg. for June, 1867.

2. The plaintiff applied to the board of supervisors for relief from the illegal tax. ·

3. But as the taxes were levied without authority of law, the collection thereof may be restrained by injunction. *Macklot* v. *Davenport*, 17 Iowa, 379; *Litchfield* v. *Polk Co.*, 18 Id. 70; *Buel* v. *Ball*, 20 Id. 282; *Tallman* v. *Butler Co.*, 12 Id. 531; *Morford* v. *Unger*, 8 Id. 82; *Langworthy* v. *Dubuque*, 13 Id. 86; *Fulton* v. *Davenport*, 17 Id. 404.

WRIGHT, J. — Few cases could be more important than these now before us. They have received the attention due them at the hands of counsel, and from us, the most careful and deliberate consideration. And we remark, in the first place, that the adjudications in other States and the Supreme Court of the United States, have recognized and settled some leading general principles, which, when applied to these cases, narrow very much the field of inquiry.

1. TAXATION: of shares in national banks.

The forty-first section of the act of congress, authorizing the taxation by and under State authority, *of the shares* of the shareholders in the associations in said act contemplated, *provided*, that the tax so imposed "shall not exceed the rate imposed upon the shares of any banks organized under the authority of the State where such association is located.

. Now the power of congress to declare that the bonds and securities issued and provided by the federal government, in carrying on and managing its fiscal affairs, shall be exempt from State taxation, is not, as we understand, denied. And as congress may prohibit, so it may allow such taxation, or prescribe the manner of its exercise.

Hence in the act before us, while there is no authority given to tax the capital of these associations, solely invested in United States securities, the power is conferred, under certain limitations, to tax the shares of the individual shareholders. Whether, in view of the pledge of the government exempting these securities from taxation, and the further thought that the capital of these associations thus invested, as such, cannot be taxed by the State, (2 Black. 620; 2 Wallace, 200,) it is competent to permit taxation of the shares, is a point not strongly urged by counsel; regarding, as they probably do, that it is definitely settled by the majority opinion of the Supreme Court in *Van Allen* v. *Nolan* (3 Wallace 573), and subsequent ones in the same court.

For myself, I cannot but remark that the argument in favor of the exercise of that power, based upon a distinction between the capital and the shares, does not strike me with the most conclusive force.

In addition to the cases herein after cited on the general subject, see upon this point: *Whitney* v. *Madison*, 23 Ind. 331; *Salem Factory* v. *Danvers*, 10 Mass. 514; *Weston* v. *City Council*, etc., 2 Peters, 449; *Bank of Commerce* v. *New York City*, 2 Black. 620. As already suggested, however, the distinction is clearly recognized and admitted, and the question can hardly now be regarded as an open one. See the following recent cases in the Supreme Court of the United States: *Bradley* v. *The People*, etc., and *The People*, etc., v. *Commissioners of Taxes* (two cases); *Wright* v. *Steltz*, Supreme Court of Indiana; *Frazer* v. *Siebern*, 16 Ohio St., 614 (Am. Law Reg. 6, 466, 483).

The rule, therefore, now is, that shares in national banks may be taxed by State authority, and that too without regard to the amount which the association itself may have invested in federal bonds.

Equally clear and well-settled is the further proposition that if the State law provides for the taxation of the *capital* of its own banks and not of its shares, and for the shares of the national banks, it fails to conform to the act of congress (section 41, June 3, 1866), and is therefore invalid. It follows, therefore, that if by our laws, the *shares* of banks organized in this State are not taxable, the *shares* of national banks cannot be, and the act of 1866, to be presently cited, is without force. *Lincoln* v. *Assessors of Barton*, 44 Barb. 148; *Bank of Commonwealth* v. *Commissioners of Taxes*, and cases before cited.

*2. —— what the power is dependent upon.*

The act in question provides that these *shares* shall be included in the valuation of the personal property of the holder, or owner, but not at a greater rate than is assessed upon other moneyed capital in the hands of individuals, and that the real estate of such association shall be subject to taxation, etc. The second section points out the method of listing these shares, and of collecting the taxes so assessed.

*3. —— not authorized by laws of the State.*

It will be observed that the act *itself* contains no proviso that this tax shall not "exceed the rate imposed upon the shares of banks" organized under the State laws. And notwithstanding the case of *Van Allen* v. *Nolan* (*supra*) would seem to imply, that this was necessary, or, that the limitation must be contained in the act which imposes the taxation, we confess our inability to see the propriety or force of the position. If the prior legislation taxes the shares, or makes them liable, either generally, as all other property, or to a given per cent, there is no necessity, in our opinion, for declaring in terms *in the act* taxing shares in national banks, that such taxation *shall not exceed*, etc. The practical result to be attained, was to prevent any discrimination in favor of the State associations, or against those organized under the

laws of congress, and there is certainly no necessity to disclaim such purpose in the State act, which seeks, ostensibly, to do that which the national legislation permits.

Keeping in view the accepted proposition that the taxation of the capital is not the taxation of the *shares*, we come to the question whether in this State, " the shares of banks organized under its authority " are taxable, or whether such taxation is upon the *capital*. And here is the point of difficulty ; for if there is no tax upon the *shares*, though there may be upon the *capital* of State banks, these levies were illegal. If there is such a tax, then they were legal and the taxes should be paid.

A question somewhat preliminary, however, may appropriately first receive attention. The act of congress 4. —— organi- it will be remembered, speaks of the State zation of State . banks. institutions as " banks *organized* under the authority of the State," etc. And now it is urged that we have no *organized* banks under our banking systems, that they have neither capital nor shares to tax, and that therefore there can by no possibility be an unjust discrimination against national banks. The argument we confess does not strike us as being in accord with the spirit and purpose of the law.

The learned chief justice in the Van Alen case (*supra*), speaking for the minority of the court, goes so far as to say that the act " witholds from the State *whose policy does not allow the organization of banks*, and provide for the taxation of shares, the authority to tax the shares of the national banking associations." It is not necessary for us to adopt this extreme view, for in this State we do authorize banking. And yet, if there would be no power to tax in the case stated by the Chief Justice, there certainly could not be where the law authorizes but the banks have not been organized. Not only so, but this provision is substantive, cannot be disregarded, and

was intended to declare the rule as to the rights of the State and federal governments. The question is, what does our law declare, and what is the method of taxation provided for? and not whether there is any property subject to taxation. We are to inquire what is the legal mode of taxation, and not determine that by the fact that State banks are *organized* to-day and have surrendered their franchises to-morrow. If this year the act is legal, it cannot be made illegal the next, by the existence or non-existence of an object upon which it is to operate. If the law contemplates and provides the machinery for the establishment of such institutions, without further legislative action, and gives the scheme of taxation applicable to the same when organized, the courts will not stop to investigate whether the machinery has or has not been put into operation. These banks within the meaning of the law, and for the purpose of measuring the rights of the State as to the subject in question, are organized, and whether they shall be clothed with vitality, depends upon individual action. And when men come to invest their means in national banks, they look to the *law* as the charter of their rights, and are not required to inquire whether State banks do or not exist. So that, without stopping to investigate whether State banks have or have not an actual organized existence at this time, we hold that the whole theory of the objection is unsound, and proceed at once to the main and cardinal inquiry, and this is, whether by our law the shares of State banks are subject to taxation.

Aside from certain exemptions not material to be noted, *all* property within the State, *including that* belonging to any bank or company, incorporated or otherwise, whether incorporated by this or any other State, is declared subject to taxation. The property of a body corporate is to be listed by its principal accounting officer

or agent. Depreciated bank-notes and the stock of corpo-
rations are to be assessed at their cash value. Each
inhabitant of the State is to assist the assessor in listing
all property subject to taxation of which he is the owner,
etc. All private property is to be assessed and taxed in
the name of the owner thereof on the first day of January,
of the then current year, and each owner shall be required
to pay taxes thereon. The assessors are to have books
properly ruled in which to enter the name of the indi-
vidual, corporation, society, partnership or firm, to whom
any property shall be taxable, as also his or their prop-
erty, *including the amount of stock or shares in any
corporation or company, not required by law to be other-
wise listed or taxed.* These provisions are found in the
general revenue law. Rev. §§ 712, 714, 719, 721, 752.

Our laws provide also for the organization of two
classes of banking institutions; a *State bank* and branches,
and those known as "*free banks*" under a general bank-
ing law. In the first (§ 1676), it is declared that the
legislature shall never impose any greater tax upon
the property employed in banking thereunder, than is
imposed upon the property of individuals. The second act
provides that *taxes shall be levied on and paid by the cor-
poration and not upon the individual stockholders;* the
value of the property to be ascertained annually by the
bank commissioners herein provided for, and the rule of
taxation shall be the same as that required to be levied
on other taxable property by the revenue laws of the
State. § 1598.

Upon this legislation, the argument for taxation is
briefly this: The capital of these (State) banks is prop-
erty, and, therefore, it is taxable. The *shares* in such
banks are property, and, therefore, they are taxable. In
other words, that the *shares*, as well as the capital, are
taxable, and, therefore, the taxation of shares in national

banks conforms to the law; for such tax does not exceed the rate imposed upon banks organized under the authority of the State.

If this argument is sound, then what is the necessity of the act of 1866? Shares in national banks are property. Under the general revenue law, they are as clearly so as shares in any other bank or corporation. Being property, they were taxable without further legislation, and this act was entirely unnecessary. The fact, however, that a special declaration to this effect was deemed necessary, tends to show that prior thereto there was no law recognizing *shares* in banking corporations, as such, subject to taxation. But without designing to do more than suggest this thought, we pass to the legislation of which we have above given a condensed statement.

We feel entirely clear that by our laws, these corporations (State and free banks) are taxable property, and that the shareholders are not to be taxed upon their shares of stock.

The proposition is not denied, that the State, in granting a franchise, might affix its own terms as conditions of the grant. And, therefore, in such a case, it might be entirely competent to declare that *shares* and *capital* should both be subject to taxation. But that equality, which should never be lost sight of in any and every scheme of taxation, most manifestly dictates that this practical, if not theoretic double taxation, should not be allowed, except this appears to be the clearly expressed intention of the statute making the grant. And when the whole *property* is reached, as it may be, either through the shares or capital, and made to bear its due proportion of the public burden, the State ought not to ask more; nor should it in good faith be given more, unless the right thereto is clearly deducible from the terms of the law, be it either general or special.

Now no. one, as it seems to us, can, from our entire legislation, fairly conclude that it was ever intended to tax both. It is not so said in terms certainly. It would not be so claimed as to partnership property, and the interest of the individual members therein, and why any more in a corporation ?

Not only so, but the law itself quite clearly negatives such intention. How otherwise are we. to understand the provision that *taxes* shall be *levied* on and *paid by the corporation*, and not upon the *individual stockholders*, entirely harmonizing as it does with the declaration that the individual shall pay taxes on his *shares* in a corporation *not required by law to be otherwise taxed?* There can be no question that the tax is not only to be *paid* by the bank, but *levied on it, and not* upon the stockholders. Any other construction would be, that the taxes against the corporation, against the property, shall be paid by the bank, and *not* by the stockholders, but the stockholders shall, nevertheless, pay on their shares. This is not warranted by the language of the law, and is against its spirit and policy. So too, these provisions are in accord with those which make liable to taxation *property belonging to a bank*, and that such property shall be listed by *the principal accounting* officer of the bank. §§ 712–714. And, indeed, it would be difficult to find so many provisions, in statutes passed at different times, upon any other subject, with so little conflict. They all point to the conclusion that it is the capital and not the shares which are to be taxed. And this has been substantially held in *The Town of McGregor* v. *The McGregor Bank* (12 Iowa, 79). All the cases, too, decided in the Supreme Court of the United States, and in other States (most of which we have herein before cited), fortify this position. The length of this opinion forbids that we should do more than thus refer to them. See further, *Morkoc* v. *Hart-*

Hubbard v. The Board of Supervisors of Johnson County.

*rauf*, Sup. Court Penn.; *First National Bank* v. *Portsmouth*, 47 N. H.; *Gordon* v. *Appeal Tax Court*, 3 How. 135; *Smith* v. *Bailey*, 9 N. H. 423; Angell & Ames on Corp. § 460.

In conclusion, in answer to some points specifically made by counsel for the appellant in the third case, we remark that this is not an instance of mere erroneous or excessive assessment. It was without authority, and the bank was not bound within any of the cases ruled in this court, to apply in the first instance for relief to the board of supervisors. If this was necessary, however, the petition avers that the application was thus made; the correction ordered; that this, without the knowledge of the bank, until long after the adjournment of the board, was subsequently reconsidered, wherefore, etc. And all these averments are taken as true on demurrer. It was certainly no part of the bank's duty to presume that the board would reconsider its action.

*5. —— unauthorized assessment: mode of relief.*

It is true that the owner is required to assist the assessor in listing his property. But it would be a most violent presumption to say that, because of this duty, without any averment that in the particular case it was discharged, the owner was estopped from complaining of an illegal or unauthorized levy.

We entertain no doubt, that the county treasurer was a proper party defendant to the plaintiff's petition. Whether the county should not have *also* been joined, is not made a point by the demurrer. The treasurer (Young) was the officer having the process, and about to execute it. Upon principles long and well settled he was a proper party.

*6. —— parties in a proceeding to enjoin collection.*

We, therefore, conclude, that as our legislation now stands, the shares in national banks in this State cannot

be taxed. The remedy is with the legislature. Other States, misapprehending the full purport and bearing of the national banking law, and in advance of its full exposition by the federal judiciary, have made the same mistake. In many of these their laws have been so amended as to meet the difficulty. If the act of congress shall remain unchanged, it will be for the legislative department here to take such action as may be deemed advisable to subject this property to its due proportion of the public burdens.

The first and third cases are affirmed — the second one reversed.

COLE, J., *dissenting.*— I concur in the foregoing opinion and in its reasoning, except upon one point, but that is the decisive one.

In my opinion our statute, aside from the act of 1866, authorized the taxation of shares in both our State and national banks. The error, as I think, of the reasoning in the majority opinion upon this point, is fundamental. It, to a greater or less extent, assumes, that the taxation of the capital stock of our State banks, and the taxation of the *shares* therein also, would be double *taxation,* and it is directly stated, that before the shares could properly be taxed the legislative intent to tax them should be clear and certain.

However much I might, upon original principles, agree with the writer of the majority opinion, in the view that the distinction between *capital* and *shares,* as held by the Supreme Court of the United States, is arbitrary and without foundation in principle, yet that question was properly before that court, and the distinction was clearly held and made the basis of its judgment. It was a question upon which the decision of that court becomes leg-

itimately binding upon us. I accept it in all its force, and insist on its application in these cases.

Our bank laws provide for the taxation of the *capital* of our State banks. Our revenue law (Rev. § 732), also provides for the taxation "of stock or shares in any corporation." * * * The general principle is that all property shall be equally taxed, and our statute has expressly provided that " all property, real and personal, within the State, is subject to taxation" (Rev. § 712), excepting certain exempt articles, and also property held for religious, charitable and educational purposes, etc. By the decision of the Supreme Court of the United States, *shares* of bank stock are *property* other and *different from* the capital, and, hence, are liable to taxation. I should therefore invert the rule of the majority opinion, and instead of holding that the legislative intent to tax them, must be made clear and certain, I would hold that, being property, they are legitimately liable to taxation, and should be taxed unless the legislative intent to exempt them from taxation is made clear and certain.

It is so obviously just and right that these *shares*, being property, should pay their equal proportion of the taxes, that I should hesitate to exempt them from taxation, under the statute making all property, real and personal, within the State taxable, even if *shares* were not, in terms, mentioned in our statute. But when we remember that by our statute "shares in any corporation " are expressly required to be listed for taxation, and the assessors are to be provided with books in which to list them, it appears to me to be sufficiently clear and certain that the legislature intended to tax shares.

If this be so, then our statute does conform to the act of congress, and the shares of national banks, like the shares of our State banks, are properly taxable in this State.

Again, it is a well settled rule of construction that if it is possible to place an interpretation upon a statute which will uphold it, such possible interpretation will be adopted rather than one which will make the statute void, as being in conflict with the Constitution or other paramount law. The majority view makes our statute void, because in conflict with the act of congress which is paramount; while the view which I adopt makes our statue valid, and upholds both laws; and this is so, leaving out of view entirely our act of 1866.

The majority opinion was prepared late in the term and only read to me on the day for adjournment, and, hence, no adequate time is afforded me to state more at length my reasons and views. I feel constrained to dissent from the conclusion reached by the majority, and in compliance with the statute, have stated the grounds of my dissent "in writing." I regret that I have not the opportunity of stating them more satisfactorily to myself.

In my opinion the first case should be reversed; the second affirmed; the third is properly affirmed upon other grounds.