*Nov. Term, 1850.*

BROWER v. O'BRIEN.

*Per Curiam.*—The judgment is affirmed with costs.

*B. McClelland*, for the plaintiff.

*D. Kilgore*, for the defendants.

| 2 | 423 |
| 128 | 17 |

---

### BROWER v. O'BRIEN.

Where a vacancy occurs in the office of the clerk of the Circuit Court, the judges thereof have the power to appoint a clerk *pro tempore*, until the next annual election, or until an appointment. can be regularly made, and for no longer time.

The form of the certificate given to such appointee is immaterial, as it can confer no rights on him which the Court is not authorized to confer.

The clerk of the Circuit Court is *ex officio* the clerk of the board of canvassers.

The duties of the board of canvassers and the clerk in making out the statement of the votes given, the persons elected, &c., are ministerial. They are not to consider any question relative to the validity of the election held, but to cast up the votes given for each person from the proper election documents, and to declare the person who, upon the face of those documents, appears to have received the highest number of votes given, duly elected to the office voted for.

The writ of *mandamus*, when it is used to place a person in possession of an office, confers no right. It merely places him in possession to enable him to assert his right, which in some instances he could not otherwise do.

In this case, the object of the *mandamus* was to compel the person in possession of the office to perform an act pertaining to the office, which it was his duty to perform irrespective of any question of rights between the parties, but which was necessary to place the defendant here in a position to assert his rights. *Held*, that the *mandamus* was rightly issued.

The name of the state is only nominally used in a writ of *mandamus*. It is a civil remedy.

APPEAL from the *Dearborn* Circuit Court.

SMITH, J.—At the *October* term of the *Dearborn* Circuit Court, in 1850, *O'Brien* filed an affidavit, stating he, be-

*Friday, January 10, 1851.*

ing lawfully eligible, was, at the general election held in *August*, 1850, duly elected clerk of the *Dearborn* Circuit Court, to fill the vacancy occasioned by the resignation of *William V. Cheek*, the late clerk. That he (*O'Brien*) and one *Raymond* were the only candidates for said office of clerk at said election, and that he (*O'Brien*) received 1579 votes, and *Raymond* received 1307 votes. That at the proper time after said election, the officers to whom the certificates, poll-books, and tally-papers made thereat were delivered, met at the court-house in said county and were duly organized a board of canvassers. That said board of canvassers then and there proceeded to estimate the votes of said county, a statement of which was drawn up by *Brower*, the then clerk of the Circuit Court, acting as clerk of the said board agreeably to the statute in such cases made and provided, containing the names of the persons voted for, the office which each person was voted for, the number of votes given in each township for each of such persons, the number given each in said county, and the aggregate number of votes given, which statement was signed by the members of the board of canvassers, and, with the certificates, poll-books, and tally-papers, delivered to the said clerk to be by him filed and kept in his office, agreeably to the statute; and that, therefore, he (*O'Brien*) was, by the said board of canvassers, declared duly elected clerk of said Court, *if there was a vacancy in the office,* he having received the highest number of votes polled for said office at said election.

The affidavit further states, that although no notice was given that his said election would be contested; and although more than twenty days had elapsed since the said board of canvassers made their return; and although the said *Brower*, then and still being the acting clerk of said Circuit Court under a *pro tempore* appointment, was, by the affiant, specially requested to make out a certified statement, under the *seal* of said Court, specifying the number of votes given to each person voted for for each office, and especially for clerk of said Court, and

who was, by said board of canvassers, declared duly elected thereto, and to transmit said statement to the secretary of state, said *Brower* refused and neglected to do so.

Upon this affidavit, on motion of *O'Brien*, a writ was issued, in the nature of an alternative *mandamus*, commanding *Brower* to make out a certified statement under the seal of the Circuit Court, specifying the number of votes given to the said *O'Brien* and *Raymond*, and who was, by said board of canvassers, declared duly elected to said office of clerk, and transmit the same to the secretary of state agreeably to the statute in such cases made and provided, or show cause, on or before the 29th day of *October*, instant, why he should not do so.

At the time thus specified in the writ *Brower* appeared, and, for return thereto, filed two pleas, which were substantially as follow: *William V. Cheek* was duly elected and commissioned clerk of said Circuit Court for the period of seven years, commencing on the 14th day of *February*, 1845, and ending on the 14th day of *February*, 1852. On the 24th of *November*, 1849, *Cheek* resigned, and on the same day the judges of the *Dearborn* Circuit Court appointed *Brower* to fill the vacancy thus occasioned. The said judges gave to *Brower* a certificate of appointment in the following words:

" *State of Indiana, Dearborn* county, ss. Be it remembered that on this the 26th day of *November*, 1849, the judges of the *Dearborn* Circuit Court met at the courthouse in said county; present, the undersigned, *George H. Dunn*, president judge of said Court, and *David Conger*, associate judge of said Court; and it being made known to said judges that *John A. Emrie*, the other associate judge of said Court, was not within said county or likely to return to it within any reasonable time, the said judges present did thereupon proceed to act upon the resignation made by *William V. Cheek* of his office of clerk of the said *Dearborn* Circuit Court, and to fill the vacancy thereby created in said office: Whereupon we, the said judges, after due consideration, do hereby appoint *Abram Brower*, of said county, to fill said vacancy,

and to hold said office for the residue of the term for which said *William V. Cheek* was elected.

"In testimony whereof we, the judges aforesaid, have hereunto set our hands the day and year aforesaid.

"*G. H. Dunn*, Pres't Judge D. C. C.

"*David Conger*, Associate Judge."

This certificate was indorsed as follows:

"State of *Indiana*, Executive Department.

"*Indianapolis, Nov.* 21st, 1849.

"The secretary of state will please issue a commission, upon the within appointment, to *Abram Brower*, clerk of the Circuit Court of *Dearborn* county.

"*Paris C. Dunning*."

The usual oath of office was also indorsed upon it.

The pleas allege, that by virtue of said appointment, *Brower* entered said office, and that said appointment still remains unreversed, and not set aside or declared void by any competent Court.

They also set out the statement of the board of canvassers relative to the votes cast for clerk at the election mentioned in the affidavit, which was as follows:

"We further certify that at said election for the office of clerk of the Circuit Court of the county of *Dearborn* aforesaid, *Cornelius O'Brien* received in *Lawrenceburgh* township 263 votes, and *Henry Raymond* 266. (Here follows a statement of the votes given in each township.) Making the total votes for said *O'Brien* 1579, and for *Henry Raymond* 1307, and that the majority of said *O'Brien* for said office over said *Henry Raymond* was 272 votes; and that no other person was voted for for said office of clerk at said election; and if the said office of clerk was at the time of said election vacant, and to be filled at said election, we declare said *O'Brien* duly elected clerk of the *Dearborn* Circuit Court; and if said office was not then vacant and to be filled at said election, then we declare him not duly elected to said office."

The pleas aver that no other statement was made by said board of canvassers, and that no certificate declaring either of the candidates duly elected was made or deliv-

ered to the defendant, for which reason the defendant says
he ought not to be required to make out a certified state-
ment under the seal of the Court, &c.

A demurrer was sustained to these pleas, and the *man-
damus* was made peremptory, whereupon the defendant
appealed to this Court.

It is contended by the appellant that the election held
in *August*, 1850, for the office of clerk of the *Dearborn*
Circuit Court was void, there being no vacancy which
could be filled by such election.   In other words, he in-
sists that by virtue of his appointment by the judges of
the Court, he was entitled to hold the office during the
unexpired term of *Cheek*, and not merely until a succes-
sor to *Cheek* was elected at the next annual election.

The question thus raised as to the duration or tenure
of *Brower's* office under his said appointment, depends
upon the construction to be given to the seventh, eighth,
and tenth sections of the 5th article of the constitution of
the state.   Those sections are in the following words:

" Sec. 7.   The judges of the Supreme Court shall be
appointed by the governor, by and with the advice and
consent of the senate.   The presidents of the Circuit
Courts shall be appointed by joint ballot of both branches
of the general assembly; and the associate judges of
the Circuit Courts shall be elected by the qualified elect-
ors in the respective counties."

" Sec. 8.   The Supreme Court shall appoint its own
clerk, and the clerks of the Circuit Courts in the several
counties shall be elected by the qualified electors in the
several counties; but no person shall be eligible to the
office of clerk of the Circuit Court in any county, unless
he shall first have obtained from one or more of the
judges of the Supreme Court, or from one or more of the
presidents of the Circuit Court, a certificate that he is
qualified to execute the duties of the office of clerk of the
Circuit Court:   Provided, that nothing herein contained
shall prevent the Circuit Courts, in each county, from ap-
pointing a clerk *pro tem.*, until a qualified clerk may be
duly elected: and provided also, that the said clerks re-

Nov. Term,
1850.

BROWER
v.
O'BRIEN.

spectively, when qualified and elected, shall hold their offices seven years, and no longer, unless re-appointed."

"Sec. 10. When any vacancies happen in any of the Courts, occasioned by the death, resignation, or removal from office of any judge of the Supreme or Circuit Courts, or any of the clerks of the said Courts, a successor shall be appointed in the same manner as hereinbefore prescribed, who shall hold his office for the period which his predecessor had to serve, and no longer, unless re-appointed."

A previous section, the fourth, declares that the judges of the Supreme Court, the Circuit Courts, and other inferior Courts, shall hold their offices for the term of seven years.

The fourth, seventh, and eighth sections, taken together, provide that the judges and clerks of the several Courts shall hold their offices for the term of seven years, and prescribe the mode by which they shall be elected or appointed. It will be observed that the words " elected," and " appointed," are used in all these sections in the same sense or as synonymous.

The tenth section then provides that when vacancies shall occur in any of these offices, successors shall be elected or appointed in the same manner in which their predecessors were elected or appointed, and that such successors shall hold their offices during the unexpired term of their immediate predecessors.

But inasmuch as a considerable period might intervene between the happening of a vacancy, and an election or appointment to fill it, in the manner thus prescribed, and as the services of the clerk of a Circuit Court could not be dispensed with during such period without great inconvenience, the first proviso of the eighth section seems to have been inserted for the purpose of enabling the Courts to appoint a clerk, in such cases, *pro tempore,* or for the time being, until such an election or appointment could be made.

We think this construction is most consonant with both the letter and spirit of these constitutional provisions.

Taking this view of the provisions of the constitution, upon the resignation of Mr. *Cheek* there was a vacancy in the office of clerk of the *Dearborn* Circuit Court, which, under the statute on the subject of elections, was to be filled at the next annual election. R. S. c. 5, a. 1, s. 122. But, until such an election could be held, the Court was authorized to appoint a clerk for the time being, and such must be regarded as the character of the appointment of Mr. *Brower*. The form of the certificate given to him is immaterial. That paper could confer no rights upon him which the Court was not authorized to confer.

The statute prescribing the duties of the board of canvassers, makes the clerk of the Circuit Court of the proper county, *ex officio*, the clerk of said board. A statement is required to be drawn up by said clerk containing the names of the persons voted for, the office for which each person was voted to fill, the number of votes given in each township to each of such persons, the number of votes given to each in the county, and the aggregate number of votes given altogether as ascertained from the poll books.

The board of canvassers are also required to declare the person having the highest number of votes given for each office to be filled by the votes of a single county, duly elected to such office, and such declaration is to be certified by the board in the statement thus required to be drawn up by the clerk.

It is then made the duty of the clerk, in all cases in which the persons elected to offices in any county are commissioned by the governor, and clerks of the Circuit Courts are so commissioned, unless notice shall be given that the election of such persons will be contested, after ten and within twenty days from the time said board of canvassers shall have made return of such election, to make out a certified statement under the seal of his said Court, specifying the number of votes given to each person voted for for each office, and who has, by said board of canvassers been declared duly elected thereto; and to

transmit the same by mail to the secretary of state at *Indianapolis*.

It is also provided that no commission shall be withheld by the governor, on account of any defect or informality in the return of any election to the office of secretary of state by any clerk of a Circuit Court, if it can, with reasonable certainty, be ascertained from such return what office is intended, and who is entitled to such commission. R. S. c. 5, a. 5 and 6.

The duties of the clerk are here plainly marked out; but it is contended it was not his duty, in this case, to make a return of the election held for a clerk of the Circuit Court, because no person was, by the board of canvassers, declared positively and unconditionally elected to that office.

With regard to this point it may be observed, that the duties of both the board of canvassers and the clerk, in making the statement and declaration required, are purely ministerial. It is not within their province to consider or determine any questions relative to the validity of the election held or of the votes received by the persons voted for. They are simply to cast up the votes given for each person, from the proper election documents, and to declare the person who, upon the face of those documents, appears to have received the highest number of the votes given, duly elected to the office voted for.

The material fact to be declared by the board of canvassers is, therefore, who received the highest number of votes for the offices voted for. In declaring this they substantially declare such persons duly elected, so far as their declaration is of any consequence. This much is declared in the statement set out in the defendant's plea. That part of the statement making the declaration of the board of canvassers dependant on a question of vacancy in the office, was improperly inserted; but it may be regarded as merely surplusage, and it affords no excuse to the clerk for his neglect or refusal to make a return of the election to the secretary of state.

It is further objected to the proceedings in this case,

that as Mr. *Brower* became possessed of his office in a lawful manner, he cannot be ousted but by some judicial proceeding to which he is made a party, and that the writ of *quo warranto* is the proper remedy for *O'Brien* if he wishes to test his rights under the election mentioned in his affidavit.

To this it may be replied that Mr. *Brower's* right to the office claimed by him is not necessarily determined by the present proceedings. The writ of *mandamus* even when it is used to place a person in possession of an office confers no right. It merely places him in possession te enable him to assert his right, which in some cases he could not otherwise do. Str. 538.—3 Burr. 1421.—8 Mod. 344. In the present instance the object of the *mandamus* is to compel the person in possession of the office to perform an act pertaining to the office, which it was his duty to perform irrespective of any question of rights between himself and *O'Brien*, but which is necessary to place the latter in a position to assert his rights. We have no doubt that this is a case in which the writ of *mandamus* may be rightly issued.

The last objection necessary to be examined is, that a *mandamus* can only issue in the name of the state on the relation of the person prosecuting it. It is true that in *England* such writs issue in the name of the king, and with us it is usual to issue them in the name of the state on the relation of an individual It is a civil remedy, however, and the name of the king or of the state is only nominally used. 12 Peters. Abr. 438. If, therefore, the proceedings should have been entitled in the name of the state, they might, under our statute, have been amended in the Court below in that respect, and no objection having been there made on that ground, they should now be considered as having been so amended. R. S. c. 37, s. 84.

*Per Curiam.*—The judgment is affirmed with costs, &c.

*J. Sullivan*, for the appellant.

*J. Ryman*, for the appellee.