ON motion for a rule on Edmund C. Knight and George W. Kennedy, Sr., the defendants, to show cause wherefore a writ of mandamus should not issue out of this court commanding them, the first named, as the presiding officer, and the second as a judge of the late election of assessor and inspector for the ninth ward of the fourteenth district of the city of Wilmington, held therein on Tuesday, the fifth day of the present month of October, to make, sign and deliver to him, Ziba Ferris, a certificate of his election as inspector for said ward to which office he was duly elected by a majority of the votes polled therefore at the said election. The motion for the rule was founded on the petition and affidavit of the relator supported by the affidavits of other persons filed with it, all substantially setting forth the following statement of facts: That at the close of the said election the votes were read and counted by the proper officers of it as directed by the statute in such case made and provided, when it was ascertained that the whole number of votes cast for inspector was four hundred and seven, of which two hundred and four were cast for Ziba Ferris, the relator, and two hundred and three were cast for Jesse U. Johnson, the only other candidate for inspector, thus giving the former a majority of one vote, and thereby electing him to the office, so far as it depended on the votes cast, and that result was thereupon publicly announced in the room in which the election was held by officers of it to the *Page 147 
persons then in it, and to persons outside at the back window on inquiry made by them as to the result of the election, and also by one of the clerks of it at the front-door of the building with the sanction of the presiding officer of the election, Edmund C. Knight. During the afternoon the number of certificates required by law to be made and signed at the election of the person chosen inspector by the officers of the election, had been prepared in due legal form with blanks in them for the name of the person who should be elected, to be filled at the proper time, and were signed immediately after the close of the election by the said Edmund C. Knight, the presiding officer, and by the two judges of it, but without the filling of the blanks left in them with the name of Ziba Ferris, the relator, or of any other person at that time; that they were then taken in hand by the said presiding officer of the election and carried away by him from the place of it, and afterwards the blanks in the certificates were filled, not with the name of the relator, Ziba Ferris, but with the name of Jesse U. Johnson, the opposing candidate for the office of inspector, and one of which so filled as aforesaid he afterwards delivered to the said Jesse U. Johnson, and the others of them as required by law. The evidence in the case afterwards produced on the return and hearing of the rule will sufficiently appear in the opinion of the court.
After Francis C. Gallagher, who was one of the clerks, and Linsley L. Pearce, one of the judges of the election in question had been sworn, and testified as witnesses in the case, Edmund C. Knight, the presiding officer of it, was next called as a witness by the counsel for the State, when Mr. Robinson, counsel for the defendants, requested the court to admonish the witness that he was not bound to answer any question in the case that would subject him to a criminal prosecution, which the court did, and he declined to answer any questions in it.
Bradford for the State. We have come to the Superior Court of the State in and for Sussex county for this redress of a gross *Page 148 
violation of law and the flagrant wrong committed in New Castle county upon a citizen of it, and by officers or ministers of the law, sworn to execute it faithfully, because of the urgency which characterizes the application, and because that court which alone has jurisdiction of this writ in this State happens now to be in session in this county, and this specific remedy is the only one adequate to redress the wrong committed and to prevent the consummation of the fraud contemplated by the projectors of it, and unless it is obtained here and now, it can be of no avail whatever a few weeks hence, or by the time it sits again in either of the other counties, as the main function of the office will have expired before that time; and we must therefore ask of the court that a peremptory writ of mandamus may at once be issued in the case, as may be done in any and every case where the law fixing the duty in question is perfectly plain and free from doubt, and due notice has been given to all the parties in interest, or where a plain and imperative duty is incumbent by law on public officers, and the facts are not disputed, the court will not require the parties to go through with the form of an alternative mandamus, and they have been notified and have been heard by counsel, and the court is fully satisfied as to the legal duty; on the contrary it has been held proper in all such cases to grant the peremptory writ without first issuing an alternative mandamus. Tap. on Mand., 407; 2 Dill, on Mun. Corp., § 707; High on Ex. Leg. Rem., §§ 504, 552; Commissioners v. Aspinwall, 24 How., 376; ex parte Goodell, 14 Johns., 325; ex parte
Rogers, 7 Cow., 526; People v. Pearson, 1 Scam., 458. A rule to show cause may properly take the place of the alternative writ for the purpose of laying the foundation for granting a peremptory mandamus. People v. Throop, 12 Wend., 183; People v.
Brennan, 39 Barb., 522. And where the case has been fully heard upon the rule to show cause, and the facts of the case are sufficiently established, or the cause shown against the issuing of the writ is insufficient, there can be no impropriety in allowing the peremptory writ in the first instance, especially when a delay might render the interposition of the court of no benefit to the party *Page 149 
aggrieved. Tap. on Mand., 407; People v. Assessors of Boston, 44 Barb., 148; People v. Wendell, 71 N.Y., 171.
According to the evidence in the case and the provisions of the statute in relation to the matter, there never were any valid certificates made and signed by the presiding officer and the judges of the election of any one to the office of inspector; for having been made and signed by them without the name of Ziba Ferris being then or afterwards inserted in them as the person who received the highest number of votes for inspector, it rendered them wholly nugatory and void, as well as false and fraudulent in law. And it was therefore the duty of the court to compel them to make, sign and deliver such certificates of the election of Ziba Ferris as inspector, as the law imperatively commanded them to make and deliver, by the writ of mandamus applied for in this case. The King v. The Mayor of York, 4 T.R., 699; 17 Ill., 167; 27 Ill., 242; 29 Ill., 413; 2 Gray, 370; 20 Pick., 484; 39 Ind., 488; 7 Wolfer Dew's Elec. Ca., 573; 9 Ala., 338. These are but a few of the many cases in which it has been held that the writ of mandamus will lie to compel election officers to issue a correct and rightful certificate of election to a person proved to have been elected to an office, notwithstanding they had already issued a wrongful certificate to another who was not elected to it. An information in the nature of a writ of quowarranto is not applicable in such a case as this. 2 Dill. on Mun. Corp., § 65; 2 Barn. Ald., 646; 5 T.R., 85; 73 N.Y., 743;2 Ind., 423. The Superior Court of the State has jurisdiction throughout the State, and when sitting in and for this county has jurisdiction to issue a writ of mandamus into any other county for the specific redress of any wrong or injury committed there to which it is applicable, or any other common law writ or process which can only be applied for on affidavit filed in open court and in term time. So far as this proceeding is to be regarded as a civil action at common law at the suit of the relator against the defendant for the redress of a personal injury, it certainly partakes much less of the nature and character of a local than a transitory action. And can there be any other valid legal ground on which the jurisdiction of the court sitting in this *Page 150 
county over it can be denied or contested? And if this be so, is not this court both authorized and bound to interpose in this case in the name of the State, and with this high and extraordinary process of it which is particularly designed for just such cases, to prevent an inevitable failure of justice as well as a gross and wilful violation of the law by these election officers without it?
Robinson, for the defendants. The writ of mandamus is not a writ of right to which any one is entitled ex debito justitia,
but the right to it is always dependent on the sound discretion of the court, and the facts of the case; and, such is the law with regard to it, when the claim presented in the application for it, is to a certificate of election to an office, like the one in question, and there is no other adequate remedy. High on Ex. Leg., Rem., §§ 9, 19; Tap. on Mand., 16; 18 Wend., 89. And the applicant in such a case must prove to the satisfaction of the court that he was duly elected to the office, or it will not be granted. On the other side, the contention was, that the certificates were made and signed and delivered by the presiding officer and judges of election, were fraudulent and void, and therefore there were no such certificates made as the law required, and the court must consider them a mere nullity. But the same section of the statute which requires the presiding officer and the judges, upon ascertaining the result of the election, to make, sign, and deliver the four certificates thereof, as directed in it, and prescribes the form of the certificate, expressly provides that: "Such certificate shall be conclusive, and the election shall not be liable to be contested." Rev. Code, chap. 17, § 8, p. 113. Could any terms be more explicit and peremptory to make the certificate final in the premises than the first branch of the sentence, which declares that it shall be conclusive? And yet the. legislature, as if to make it still more so, and positively secure against any attempt even to question its finality in any way whatever, has further provided that such election "shall not be liable to be contested." And the clear import of the statute is, that it is to be final and conclusive, and shall not be called in question in any court of law or elsewhere. There were good and sufficient *Page 151 
reasons for this provision in respect to the election of this officer, and the chief one doubtless was, that the period which would intervene between his election to the office and the general election to follow it in his election district would be so brief that there would not be sufficient time and opportunity for the investigation and determination of any legal contest which might be raised with regard to the validity of his election. He would, therefore, respectfully submit, that this provision of the statute itself puts it out of the power of this tribunal, or any other tribunal in the State, by a writ of mandamus, or any other writ or form of proceeding, to allow the certificate of election made, signed, and delivered by the presiding officer and the judges of it, to Jesse U. Johnson, as the duly elected inspector at that election, and now held by him, to be contested or the legal validity of it called in question; and that this court should, consequently, refuse the application. But if it were necessary, with the view which he had taken of the law of the case, and if this court had jurisdiction in it, which he would also respectfully beg leave to deny, independent of that express provision of the statute, for him to proceed any further in his argument, he would add, that mandamus is not the proper remedy in a case of an uncertain and disputed title to an office, but an information in the nature of a quo warranto is, on the contrary, the appropriate remedy in such a case. High on Ex. Leg. Rem., § 61.
Higgins for the State. The question presented upon the law, and the facts proved in this case beyond a doubt, is not one of legal title to an office; or, in other words, the question here presented to the court on the law, and on the facts proved, without any evidence to the contrary, is not whether Ziba Ferris or Jesse U. Johnson is justly and lawfully entitled to the office of inspector in the ward mentioned, but one of far greater and graver importance than that, and that is, whether this court, which is a State court, and not merely a county court, with a jurisdiction coextensive with the limits of the State, has the power, in the exercise of one of the highest and most beneficent judicial functions with which it is unquestionably and alone endowed among *Page 152 
the tribunals of the State, to award a writ of peremptory mandamus, and ought to do it in this case, to prevent an utter failure of public justice, the perpetration of a gross fraud, and a flagrant wrong on the relator, and a no less flagrant violation of our election laws, the first object of which is to secure the purity, legality and justice of our public and political elections from all corruption and pollution, particularly by sworn ministers, in the fraudulent execution of them, to put one who was clearly and unquestionably lawfully elected to such an office, notwithstanding it is claimed by another who was just as clearly and unquestionably not lawfully elected to it, and whose credentials of his election to it are manifestly fraudulent and void under the law.
The evidence is clear and conclusive, and not even contradicted, that at the close of the election all the ballots were duly read and counted and the result ascertained and recognized by all the officers of the election without any dissent or question whatever, that Ziba Ferris had received a majority of the votes cast for the office of inspector, and that it was thereupon so announced publicly with the sanction of the presiding officer and the acquiescence of every other officer of the election; and that was the only way in which it could have been rightfully and lawfully ascertained. Certificates of election had been previously prepared during the afternoon by the clerks with the name of the person who should be chosen for the office left in blank to be filled with it when ascertained, and were afterwards signed by the presiding officer and the judges of the election, and carried away without being filled with his or any other name, and it was not until after they had concluded their official connection with it and separated and departed from the place of holding the election, that the name of the said Jesse U. Johnson was inserted in the blanks on the false and fraudulent pretense then for the first time alleged and set up that one illegal vote had been cast and counted for the relator, which rejected from the count would reduce the total poll to a tie vote, and that in such case the presiding officer was entitled to the casting vote and which he thereupon cast for the said Johnson, and then filled *Page 153 
the blank in the certificate with his name as it now appears and delivered it to him. But it is not necessary to dwell longer on this sinister and nefarious transaction, for the evidence shows it in its true character and in colors quite as clear and strong as any he could possibly employ in describing or denouncing it.
Comegys, C.J., delivered the opinion of the court. This case comes before the court on the petition and affidavit of Ziba Ferris, the relator, filed on the second day of this term, and which is in substance as follows: That he was on and prior to the 5th day of October, A.D. 1880, and ever since hath been an inhabitant and resident of the fourteenth election district of the city and hundred of Wilmington, New Castle county and State of Delaware, the same being the ninth ward thereof, and a duly qualified elector of the said election district. That an election for an assessor of the second assessment district of Wilmington hundred aforesaid, and an inspector for the fourteenth election district of the hundred and city of Wilmington aforesaid, it being the ninth ward of said city and hundred, was held in said election district and ward on Tuesday, the 5th day of October, A.D. 1880, at the Brandywine Academy; that Edmund C. Knight, of said ward and election district, was duly appointed by the levy court of said county as the presiding officer and inspector of said election, and acted as such presiding officer and inspector of said election, and before opening the said election he took as such presiding officer to his assistance George H. Kennedy, Sr. and Linsley L. Pierce, two qualified electors of said election district, and that the said Edmund C. Knight, George W. Kennedy, Sr., and Linsley L. Pierce, having first been in due manner sworn or affirmed before opening said election, were and acted as the judges of said election; and that the said Edmund C. Knight, as such presiding officer, took to his assistance Francis E. Gallagher and William F. Baylis as clerks of said election. That the said election was opened between the hours of nine and ten o'clock in the forenoon and continued open until six o'clock in the afternoon of the day aforesaid, when it was closed, whereupon *Page 154 
the said presiding officer and judges forthwith read and counted the votes given, and ascertained the state of the said vote and the result of the said election, and the number of votes given for each candidate voted for as inspector, as follows, to wit, that for the office of inspector your petitioner received two hundred and four votes, and Jesse U. Johnson received two hundred and three votes, and that your petitioner having received the highest number of votes for said office of inspector was chosen as such inspector; and that the said presiding officer and judges then and there so ascertained and declared your petitioner to have been chosen as such inspector of said election district. That your petitioner did at said election in fact receive two hundred and four votes for said office of inspector, and that the said Jesse U. Johnson did at said election receive for said office only two hundred and three votes, whereby your petitioner was chosen to said office of inspector by a majority of one vote, your petitioner and the said Jesse U. Johnson being the only candidates for said office voted for.
That immediately on closing said election and ascertaining the state of the votes as aforesaid, the said presiding officer and judges did then and there sign three blank certificates of the election of an inspector of said election district, the name of the inspector chosen at said election, to wit, your petitioner, not being inserted in said certificates, or any of them. That the omission of the name of your petitioner from said certificates as aforesaid occurred as follows: They were prepared in blank by one of the clerks during the said election, and before the closing thereof and when the said presiding officer and judges afterwards signed them as aforesaid at the close of the election their understanding was that the said certificates contained the name of your petitioner as having been chosen as inspector as aforesaid, neither of them then and there observing that the name of your petitioner had been omitted as aforesaid. That the said Edmund C. Knight the presiding officer of said election, and the said judges have not, nor have any or either of them, transmitted any certificate of the election of your petitioner at said election as inspector *Page 155 
as aforesaid for said election district, either to your petitioner, or to the clerk of the peace, or the sheriff of New Castle county.
That your petitioner is informed, and so charges and alleges that after the said certificates had been signed as aforesaid by the said presiding officer and judges, and after they and the clerks of election had left the Brandywine Academy, the place of election aforesaid, and at a late hour of the evening of said day, the said Edmund C. Knight unlawfully and fraudulently inserted in the said certificates, to wit, in the blank left therein by the said judges as aforesaid, the name of the said Jesse U. Johnson as the person elected inspector instead of the name of your petitioner. And that the said name of the said Jesse U. Johnson was inserted in said certificates as aforesaid by the said Edmund C. Knight at the instance of and upon the fraudulent pretence by him of the assumed authority of the presiding officers and judges of the election districts comprised within the said second assessment district of the hundred of Wilmington aforesaid, at their meeting on the evening of the said election and after said certificates had been signed as aforesaid at the city hall in said hundred for the purpose of ascertaining the number of votes given for assessor in the different election districts comprised within the said second assessment district. And that the said name of the said Jesse U. Johnson was so inserted as aforesaid in the said blank in each of the said certificates without the knowledge or consent of the said Linsley L. Pierce, one of said judges as aforesaid, and contrary to the understanding and purpose of all of said judges of said fourteenth election district when they signed the certificates as aforesaid.
That the signing of the said certificates in blank as aforesaid did not, as your petitioner is advised, constitute the making and signing of certificates of the election of inspector as required by the act of Assembly in such case made and provided; and that the subsequent insertion in said blank certificates of the name of the said Jesse U. Johnson as aforesaid by the said Edmund C. Knight, as hereinbefore set forth, did not give any effect thereto, but the said blank certificates so filled in are illegal and *Page 156 
utterly void and not the certificates required by the act of Assembly in such case made and provided.
That the said Linsley L. Pierce, one of the judges of said election as aforesaid, is ready and willing to unite with the said Edmund C. Knight and George W. Kennedy, Sr., as judges of said election, in making and signing certificates in due form of law that your petitioner was at said election elected inspector as aforesaid, and in transmitting the same as required by law, to wit, one to your petitioner, one to the clerk of the peace of New Castle county, and one to the sheriff of said county.
That since the said election your petitioner has made demand of the said Edmund C. Knight, as the presiding officer of said election, and George W. Kennedy, Sr., as one of the judges of said election, and of Linsley L. Pierce, the other of said judges of said election, that they make and sign three certificates of the election of your petitioner at said election as inspector of said fourteenth election district, and that they transmit one of them to your petitioner, another to the clerk of the peace of New Castle county, and another to the sheriff of said county. But that the said Edmund C. Knight and George W. Kennedy, Sr., refused to comply with the said demand of your petitioner; and that the said Linsley L. Pierce, upon the said demand, expressed his willingness, and then was and now is willing to unite with them in making and signing and transmitting the same as demanded by your petitioner as aforesaid, whenever the said Knight and Kennedy would or will do the same.
Your petitioner being without other adequate remedy in the premises therefore prays your honors that a rule may issue out of this honorable court directed to and requiring the said Edmund C. Knight and George W. Kennedy, Sr., respectively the presiding officer and one of the judges of said election for inspector of the fourteenth election district of the hundred of Wilmington in New Castle county, to show cause why a writ of peremptory mandamus shall not issue against them as such presiding officer and judge of election as aforesaid, commanding them to make and sign and unite with the said Linsley L. Pierce, *Page 157 
the other of said judges of said election in making and signing three certificates that at the said election your petitioner was duly elected inspector for the said fourteenth election district of Wilmington hundred aforesaid, and in transmitting one of said certificates to your petitioner, one of said certificates to the clerk of the peace of New Castle county and the other of said certificates to the sheriff of said county. The signature of the petitioner, Ziba Ferris, to the said petitioner was accompanied with his affidavit as follows:
STATE OF DELAWARE, NEW CASTLE COUNTY, ss. 
Personally appears before me on this eleventh day of October, A.D., one thousand eight hundred and eighty, Ziba Ferris, who, being conscientiously scrupulous of taking an oath, is solemnly affirmed according to law, and says that the facts set forth in the foregoing petition are true.
 ZIBA FERRIS.
Affirmed and subscribed the day and year aforesaid, as witness my hand,
 JOSEPH W. VANDERGRIFT, Justice of the Peace for Bew Castle County.
Accompanying the petition and filed with it are the following affidavits in support of its statements, viz.:
STATE OF DELAWARE, NEW CASTLE COUNTY, ss.
Linsley L. Pierce, of the city of Wilmington and State of Delaware, being duly sworn according to law; deposes and says that an election for the purpose of choosing an assessor of the second assessment district of Wilmington hundred, and an inspector for the fourteenth election district of the hundred and city of Wilmington (it being the ninth ward of said city) was held in said election district and ward on Tuesday, the fifth day of October, *Page 158 
A.D., one thousand eight hundred and eighty, at the Brandy-wine Academy. And that Edmund C. Knight, of said ward and election district, was duly appointed by the Levy Court of New Castle county as the presiding officer and inspector of the said election, and that before opening said election the said Edmund C. Knight, as such presiding officer, took to his assistance George W. Kennedy, Sr., and this deponent, Linsley L. Pierce, two qualified electors of said district, and the said Edmund C. Knight, George W. Kennedy, Sr., and this deponent having first been in due manner sworn or affirmed before opening said election, were, and acted as, the judges of said election, and that the said Edmund C. Knight, as such presiding officer, took to his assistance Frank E. Gallagher and William Baylis as clerks of said election.
That the said election was opened between the hours of nine and ten o'clock in the forenoon of the day aforesaid, and continued open until six o'clock in the afternoon of said day when it was closed; and when the said election was so closed as aforesaid, the said presiding officer and judges forthwith read and counted the votes given and ascertained the result of said election, and the state of the vote, and the number of votes given for each candidate voted for as inspector and assessor as follows, viz.: That for the office of inspector Ziba Ferris received two hundred and four votes, and Jesse U. Johnson received two hundred and three votes; and that Ziba Ferris, having received the highest number of votes for said office of inspector, was chosen as such inspector, and that for the office of assessor as aforesaid, Josiah McCall received two hundred and four votes, and Thomas W. Saville received two hundred and three votes. That the only persons present in counting said votes and ascertaining the result of the said election and the state of said vote were the said Edmund C. Knight, George W. Kennedy, Sr., and this deponent, the judges thereof, and Frank E. Gallagher, one of the said clerks, and George M. Pike, who was called on by the said Edmund C. Knight to assist in making count as clerk in place of the said William Baylis, the said Baylis having left because of sickness. That immediately upon making the *Page 159 
said count and ascertaining the result of the said election and the state of the vote as aforesaid, Edmund C. Knight declared the result in the presence of the other judges and the clerks aforesaid, and said that Ziba Ferris had received for inspector two hundred and four votes, that Jesse U. Johnson had received two hundred and three votes, and that Ziba Ferris had received one majority for inspector, and Josiah McCall had received for assessor two hundred and four votes, and Thomas W. Saville had received for assessor two hundred and three votes, and that Josiah McCall had one majority for assessor; and that Frank E. Gallagher then asked Knight if he should announce the vote to the people outside of the building, and the said Knight told him to do so, and to announce that Ziba Ferris was elected inspector by one majority, and that Josiah McCall as assessor had one majority, and the said Frank E. Gallagher thereupon forthwith made the said announcement to the people outside the building.
That three certificates had been drawn up of the result of said election of inspector, with a blank in each of them to be filled in with the name of the person receiving the highest number of votes as inspector chosen; and that immediately upon ascertaining as aforesaid and declaring the state of the vote and the result of said election, the said Edmund C. Knight, George W. Kennedy, Sr., and this deponent as the judges as aforesaid signed said three certificates, and this deponent at the time of so signing them was under the impression that the blanks for the name of the inspector chosen and elected had been filled in with the name of Ziba Ferris, and this deponent signed said certificates, supposing and in the belief that said certificates of election said Ziba Ferris was elected inspector as aforesaid, and that this deponent would not have signed any certificate of the election of Jesse U. Johnson as such inspector, nor any certificate of the election of such inspector with a blank, if such blank were to be filled with the name of the said Jesse U. Johnson; and that this deponent is informed that the said Edmund C. Knight afterwards wrote in said blanks in said certificates the name of the said Jesse U. Johnson, and has delivered one of said *Page 160 
certificates to the said Jesse U. Johnson, one to the sheriff of New Castle county and one to the clerk of the peace of said county; that the filling in of said blanks in said certificates with the name of Jesse U. Johnson as such inspector, and the delivery of the same as aforesaid in such form after they had been signed as aforesaid by the deponent, was without the knowledge or consent of this deponent, and was not the official act of this deponent, but on the contrary thereof, was unauthorized and fraudulent, and a perversion by the said Edmund C. Knight of the signature of this deponent to said certificate, made by this deponent of the election as such inspector of the said Ziba Ferris.
And this deponent further states that the said Edmund C. Knight and George W. Kennedy, Sr., also both signed said certificates under the same impression and for the same purpose he signed them, to wit, that the said certificates were certificates of the election of the said Ziba Ferris as inspector as aforesaid; and that immediately after the said certificates were signed as aforesaid, the said Francis E. Gallagher asked the said Edmund C. Knight, if he Gallagher, should take to Ziba Ferris one of the certificates of his election as inspector as aforesaid, and he, the said Knight, replied no; that he, Knight himself, would give it to Ziba Ferris. The judges and clerks then left the polling place.
 LINSLEY L. PIERCE.
Sworn to and subscribed this 13th day of October, A.D. 1880, before
 JOSEPH W. VANDERGRIFT, Justice of the Peace.
STATE OF DELAWARE, NEW CASTLE COUNTY, ss.
Francis E. Gallagher, of the city of Wilmington and State of Delaware, being duly sworn according to law, deposes and says that the election for the purpose of choosing an assessor of *Page 161 
the second assessment district of Wilmington hundred, and an inspector for the fourteenth election district of the hundred and city of Wilmington, it being the ninth ward of said city, was held in said ward and election district on Tuesday the 5th day of October, A.D. 1880, at the Brandywine Academy, and at said election I was called upon by the judges of said election to act as one of it, and acted as one of the clerks of it, and William F. Baylis was in like manner called upon and acted as the other clerk of it; that Edmund C. Knight, the presiding officer of said election, and George W. Kennedy, Sr., and Linsley L. Pierce, the judges thereof, and William F. Baylis and I, as the clerks thereof, were in due manner sworn or affirmed before opening said election; that it was opened between the hours of nine and ten o'clock in the forenoon of the day aforesaid and continued open until six o'clock in the afternoon of said day, and was then closed, and when it was so closed as aforesaid the presiding officers and judges forthwith read and counted the votes given, and ascertained the result of said election, and the number of votes given for each candidate voted for as inspector and assessor, as follows, to wit, that for the office of inspector Ziba Ferris received two hundred and four votes, and Jesse U. Johnson received two hundred and three votes, and that Ziba Ferris, having received the highest number of votes for said office of inspector, was chosen as such inspector; and that for the office of assessor as aforesaid, Josiah McCall received two hundred and four votes and Thomas W. Saville received two hundred and three votes. That about four o'clock in the said day the said William F. Baylis got sick and left the polls in the said election district for the remainder of the day, and afterwards George W. Pike was called in by the presiding officer and judges of election to act as clerk instead of him.
About three o'clock in the afternoon of said day I prepared three certificates in blanks, certifying the election of an inspector for the said election district, being the ninth ward of said city, and after the polls were closed and the ballots were counted and the result was ascertained, I said to the other clerk, George W. *Page 162 
Pike, "Will you fill in Mr. Ferris' name in the blanks in the certificates for the judges to sign?" as he wrote better than I did. He said he would. I then went to the door and was asked the result by some one in the crowd outside and, closing the door, I said to Knight, the presiding officer, "Shall I announce the result?" and he said "yes." He was then engaged in signing the certificates. After that some one called through the back window and asked the result, and Knight said, "One majority for Ferris, one majority for McCall." Just before that I saw George W. Pike with the certificates before him on the table and supposed that he was filling the blanks in them with Mr. Ferris' name, and I saw him passing them one by one to the judges for their signatures as if they had been filled in properly. The crowd then got up on the steps and knocked at the door, and I opened it, and among others John McSorley came in and stood looking at Knight, when Knight looked up and said, "Well, John, they beat us one vote." The certificates had then been signed by all the judges, for I then saw their signatures, and said to Knight, "Who delivers the certificate to the inspector?" He said, "I will hand it to Mr. Ferris in the morning." The ballots were then put into the ballot-box again and one certificate and tally list, and then we left. No certificate of votes for assessor was prepared, as Knight said it was unnecessary, according to his instructions. I supposed until Saturday afternoon, the 9th inst., that the certificates of the election of the inspector had been properly filled in with the name of Mr. Ferris before they were signed by the judges, but on that Saturday I heard to the contrary, and I met Edmund C. Knight on the evening of last Saturday, and having heard that he had stated that the certificates did not contain the name of Mr. Ferris or anybody else as having been chosen inspector for the fourteenth election district, I said to him: "How is it you say those certificates were in blank?" He said, "Well, they were so." I then said that was strange, as I distinctly recollected asking Pike to fill them in, and from his position at the table and motions supposed he had done it. Knight then said, "Yes, they were really blank, but I did not know it until I got into *Page 163 
town," referring to his going to the City Hall on the evening of the election day when the inspectors met as a board of canvas on the assessors' vote. I then said, "How do you justify this proceeding of yours of throwing out a vote?" "Well," he said, "the certificates were in blank and the board of canvas hrew out the vote of Coyle, who was not a resident of the ward, and I cast the deciding vote and filled in the certificates for Johnson. I could not help it." I then said, "How do you know how Coyle voted?" He said, "He is a Republican." Immediately upon closing said election and ascertaining the state of the vote as aforesaid, the said presiding officer and judges did then and there sign the three blank certificates of the election of an inspector of said election district, the name of the inspector chosen at said election, to wit, the said Ziba Ferris, not being inserted in them or any of them, the omission of his name from them occurred as I have before stated; they were prepared in blank during the election and before the closing of it, and when the said presiding officer and judges signed the said certificates as aforesaid, their understanding was that the certificates contained the name of Mr. Ferris as having been chosen inspector as aforesaid, neither the presiding officer or judges or any of them then and there noticing that the name of Mr. Ferris had been omitted from them.
 FRANCIS E. GALLAGHER.
Sworn and subscribed before me this eleventh day of October, A.D. 1880, as witness my hand and seal.
 JOSEPH W. VANDERGRIFT, Justice of the Peace.
Upon these several papers having been read and considered, and the prayer and motion for a rule having been debated, the rule was granted, and Friday, the 15th instant, was fixed for the hearing of it. At that time witnesses were produced by the relator in support of his application, viz., the above affiants, Francis E. Gallagher and Linsley L. Pierce, clerk and judge respectively aforesaid of the election. *Page 164 
Although there did not appear to be any serious difference of opinion between the counsel for the respective parties upon the law ofmandamus, yet we feel called upon to say that, from the consideration we have been able to bestow upon the subject, we do not think there is room for any such difference. By the Constitution of this State and the statute law, this court is invested with full power to award the writ to compel the performance of a public duty, in all cases appropriate for its exercise. The jurisdiction to issue this writ is the same precisely as that formerly exercised by the Court of King's Bench in England, except where modified by statute there; and was conferred upon the Supreme Court, existing before and under the Constitution of 1792, by the following section of "An act for the better regulation of the Supreme Court within this Government." Hall's Dig. of 1829, p. 104.
"SEC. 3. The said judges, or any two of them, shall have full power and authority to hold the said court; and to examine, correct and punish the contempts, omissions, neglects, favors, corruptions and defaults of all, or any, the justices of the peace, sheriffs, coroners, clerks, and other officers within this Government; and also shall award process for levying all such fines, forfeitures and amerciaments as shall be taxed, imposed, or set, in the said Supreme Court, or estreated there; and generally shall minister justice to all persons and exercise the jurisdictions and powers granted them, concerning all and singular the premises, according to law and equity, as fully and amply to all intents and purposes whatsoever as justices of the King's Bench and Common Pleas, at Westminster, or the Chancellor of England, can now do."
This section is also to be found in the two codes made since that of Judge Hall, and appears, in the last of them, at page 564, being the second section of chap. xcii. Further, this extraordinary process has been issued by this court in several cases and applications for it entertained in others. One of the former was where a bridge company of New Castle county had neglected to perform the duty required by law of making a bridge over the Christiana river (State v. Wilmington Bridge Co., 3 Harr., *Page 165 
312), and another, where certain officers of a church had refused to open its doors for the purpose of holding an election for trustees, and to deliver the keys and books to the new board elected at the church but not in it. The writ was awarded, no objection to the jurisdiction being raised, but only to the formality of the proceedings to obtain it, and the court say, in their opinion: "The writ of mandamus
is a prerogative writ, as it is termed in law, by which the Court of Kings Bench exercises its supreme jurisdiction over all public bodies and officers in the administration of justice in all cases in which the law has provided no adequate or specific remedy to prevent a failure of justice, and has been peculiarly applied to the regulations of corporations," etc. John H. Cannon et al. v. John Janvier, Jr., et al., 3 Houst., 27. This court has never refused the writ where a case for its operation has been presented — recognizing its obligation to put it in operation where there was no other adequate means of enforcing the execution of duty by an officer. Although no case has ever occurred calling upon the court to apply it to the case of election officers making default in the performance of their duty, yet it is not doubted that never, under any circumstances, would it have been refused if the fact had shown a case of inadequacy of relief in any other way. Here is the case of an election for assessor and inspector (both important public officers) where it is alleged and attempted to be shown that although the relator was declared to have been chosen to the office of inspector by a majority of one of the whole number of votes cast, yet a certificate of that fact has been refused him, and one with the name of the person who was the candidate against him inserted in it, delivered to such person. If these facts have been satisfactorily established, do they not show that the relator is denied what by law he ought to have? Certainly. And if that certificate has been shown by the proof to be a nullity, by reason of any circumstances or fact, ought not a valid certificate to be ordered, and to be delivered to the relator, if in truth he had the highest number of votes? We think there can be but one answer, and that an affirmative one. Then here is a prima facie case for the exercise of the jurisdiction; for the petition *Page 166 
and affidavits present just such facts. If the proof support the facts alleged, then here is a case also of gross wrong and outrage to the whole body politic, which is vitally concerned in maintaining the purity of the election franchise, as well as to the relator, and having a public character it demands at our hands prompt decision upon its merits.
In support of the aforesaid affidavits, as to the circumstances occurring at the close of the election, we have the testimony at the bar of the court of two of the affiants, — Francis E. Gallagher and Linsley L. Pierce, the former one of the clerks of the election and the latter one of the judges. They both swear substantially to the same facts — that at the close of the election the votes were read out and tallied; that there were four hundred and seven of them in all, two hundred and four of which were cast for the relator and two hundred and three for his competitor, Jesse U. Johnson, thus giving him, the relator, a majority of one, and showing him to have been chosen for the office of inspector. At the same election Thomas W. Saville and Josiah McCall were candidates for the office of assessor, and all the tickets voted contained also the names of one or the other of them. By their testimony two hundred and four votes were given for McCall for assessor and two hundred and three votes for his opponent, Saville, thus giving to the former a majority of one and showing him to have been chosen for the office of assessor: that such result was announced in the room, and also to a person outside at the back window, who inquired concerning it; and, with the consent of the presiding officer Edmund C. Knight, at the front door, to the people there, by the witness Gallagher. It is also stated by Gallagher that the said Knight made the same announcement of the result to one John McSorley, using this language in reply to the former's question: "Well, John, they beat us one vote". The witnesses further state that certificates in blank for the name of the successful candidate for inspector had been prepared during the afternoon to be filled up at the proper time, and that they were in due legal form, and Gallagher swears that when the announcement of the result was made by Knight, he himself handed the blank certificates to *Page 167 
George M. Pike, the other clerk, requesting him at the time to fill them up with the name of the relator, Ziba Ferris, the successful candidate for inspector, and that he promised to do so; that upon his return from the door where he had made the public announcement of the result of the canvas, he observed the presiding officer, Knight, and the judges, Kennedy, Sr., and Pierce, signing the certificates, which he supposed had been filled with the name of the relator; that when the signing was completed, he inquired, "Who is to deliver the certificate to Mr. Ferris," and that the respondent, Knight, replied, "I will hand it to him tomorrow morning." This action of the judges and question by Gallagher and reply by Knight is also sworn to by Pierce, as well as the facts before stated. Here we have the concurrent and corroborating testimony of two witnesses, who were present, to the same state of facts — to the public declaration by the presiding officer at the election that Ziba Ferris, the relator, had been chosen inspector for the ninth ward in the fourteenth election district of the city of Wilmington. It appears, however, by the testimony of Gallagher that Pike, the clerk, did not, in fact, perform his promise and did not fill up the blank in the certificates with the name of Ziba Ferris, or that of any other person, which, if true, would show design, or accidental omission from the confusion attending such moments at election polls. His testimony is also that he met Knight on the Saturday following the election and learned from him that the Board of Revision, as he termed it, had thrown out the vote of an elector, who was assumed to have voted illegally, and for Ferris, and that he had given an additional casting vote for Johnson, and then filled the blank with his name. This is the testimony delivered in this court with respect to the facts stated. There is no counter proof on the other side; not a witness has been offered in denial of these important facts; nor are they opposed by anything but affidavits, which are not evidence in this case, but sworn pleading only, or traverses of the facts alleged in the petition for the rule.
What weight is this court to give to the testimony of Gallagher and Pierce? They stand before us as respectable *Page 168 
witnesses, present when the facts they swear to must have transpired, and sustaining with apparent calmness and clearness of mind the original statement upon the cross-examination of the relator's counsel. No hint was given us they were not credible witnesses, nor have we any suspicion that they are not. If their statements about the facts of the result of the election, the announcement of it, and the certificates, are not to be relied upon, why. were we not furnished by the respondents with countervailing proof? It is but reasonable to suppose it could have been had if it existed; for the other persons present at that time all live in the same ward of the city, and of course within reach of the court's process. It is unreasonable for us to conclude — notwithstanding the delicate nature of this case — that such opposing proof could not be made? We think all candid persons will say no. Sensitive as the public is now to everything which concerns the contests of parties for supremacy, we yet can find no other way of treating this case than the straight one followed in those between man and man, where the rule is that uncontradicted testimony by credible witnesses is to be believed, if they had means of knowing the facts, and their statements are not evident mistakes by being inconsistent with circumstances about which there is no dispute. Apply that rule to the case before us, and it is but our obvious duty to say that we believe the testimony of the witnesses, Gallagher and Pierce, is true. But the learned counsel for the respondents pointed our attention to the fact that both the same witnesses swore that the names of all who voted, and no others, were written down by the clerks, as they were announced by the presiding officer, Knight, who received them at the time they voted, and also that one of the votes opened was a double vote, and for Ferris, and was rejected, and also that the name James Rogers was erased from the lists at one place, it being found to be at another place; and that as this state of things would show that only two hundred and five votes were cast, and not two hundred and seven as alleged (the erased name having its appropriate number and one necessary to make their alleged total) by those witnesses, we therefore should disregard their testimony, and then the case for *Page 169 
the relator would be without proof as required in a court of law. If we had any proof by witnesses of credibility at this bar, that the statements of Gallagher and Pierce are not true with respect to the other facts stated by them — that is if a contrary state of facts were sworn to, or these facts denied by competent and creditable witnesses, we might then be compelled to the conclusion that they had sworn falsely about the number of voters; but as such is not the case, we must rather treat their testimony as a mistake — though we may not be able to understand how it could have been made. The fact remains, however, that there is no denial by witnesses of the main facts, nor any attempt to compel the attendance of any one who could dispute them, if they were not true, if such person existed. The clerk, Pike, might have been brought, and the judge, Kennedy. What inference but one can be drawn from the neglect to have subpoena process issued for them? The only thing offered in answer to the relator's proof is the following affidavit of Knight and Kennedy, which, as I have before said with respect to such papers filed by the respondents in these cases, are mere sworn pleadings, or traverses, and not evidence in the cause.
The affidavits mentioned are the same precisely in language and it will be sufficient, therefore, to give the language of one only of them.
[Here the Chief Justice read the principal part of one of the above-mentioned affidavits.]
Now it will be observed that these papers do not attempt to follow the affidavits of the other side, upon the same subject, in their details; but make a general statement, though sufficient as an indirect denial of the facts alleged. Why not have denied them in detail, if they were false, or such as were false? That is the usual mode pursued in countervailing affidavits. But taking them as they are, do they deny that Ziba Ferris, the relator, received the highest number of votes read out at that election? Not at all; nor by necessary inference. But they aver that the highest number of legal votes was given to him. Now such is not the fact, even if the vote of Coyle is to be held to have been lawfully taken from the box and rejected, because there is no *Page 170 
pretence that the additional casting vote of Knight was given until the officers of the election had dispersed; in fact, upon the testimony of Gallagher as to his conversation with Knight, it must have been given at the City Hall at the meeting of the Board of Revision, so called. This and another expression used in these affidavits it may not be proper to ascribe to any design by the affiants to misstate facts, but rather to misinformation in the mind of the person who drew the affidavits, and a want of ready appreciation by the affiants of the force of terms and expressions.
There is also something else to be considered. No one of these affidavits filed on the respondents' behalf denies in terms, as might so easily have been done, if the fact could have been gainsaid, that, when the result was ascertained, it was announced that Ziba Ferris was elected inspector; nor any that Pike promised to fill the blank with the name of Ferris, or that Knight promised to hand to him the certificate of his election.
Knight excused himself to Gallagher by the statement that the Board of Revision, so called, had rejected the vote of Coyle as illegal, and that he then gave the casting vote and filled in the blank in the certificates with the name of Johnson. The affidavit of Knight does not deny this alleged conversation, but it might have been denied if incorrect; for it is stated also in Gallagher's affidavit, which, of course, was seen by Knight before he made his own. It being a most material fact alleged by Gallagher, not to deny it by Knight in his counter affidavit, was a virtual admission of its truth. In that light, therefore, it is entirely opposed to the statement set forth in both Knight's and Kennedy's affidavits, that "immediately" upon ascertaining the result of the poll the certificates were made out for Johnson. But supposing it to be true that this so-called Board of Revision rejected the alleged illegal vote of Coyle, the question still is, bad that body any such right? If so, it has not been shown; nor did any exist in it for any such purpose. There is not a line or word of any statute that gave them any such right. The presiding officer and judges of the election had such right when the alleged illegal vote was offered, and, perhaps, if it *Page 171 
could have been identified at any time before it had been read and counted; but after that their power ceased, nor did any exist anywhere for that purpose — for the law says that there shall be no contest ofsuch elections.
With an anxious desire that the conclusion we have arrived at may seem altogether the proper one, but concerned more that it should be entirely satisfactory to our own consciences, we announce as our opinion that the certificates signed by the judges of the election in question were nullities, by having no name inserted in them, as we believe from the proof before us, at the time they were signed by the election officers and that body dispersed; and that no authority was given, at any time, by those officers to fill the blank with the name of Jesse U. Johnson; that Ziba Ferris received at said election the highest number of votes cast, and was, therefore, chosen for the office of Inspector, and that certificates of that fact ought to be made in due form of law by the presiding officer and judges of said election and delivered as the law requires and as prayed for in the rule. We therefore order that the rule in this case be made absolute, and that a peremptory mandamus be issued commanding this duty to be performed on or before the 21st instant.